UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------- X
                                  :

PARAMOUNT PICTURES
CORPORATION,
                                  :

            Plaintiff,             :        **Civil Action No.  12 CIV-1268 (AJN)**

     -against-                    :

ANTHONY PUZO, AS EXECUTOR OF   :
THE ESTATE OF MARIO PUZO,
                               :

           Defendant.          :

----------------------------------- X

## ANSWER TO FIRST AMENDED COMPLAINT AND
## FIRST AMENDED AND SUPPLEMENTED COUNTERCLAIM

       Defendant, Anthony Puzo, as Executor of the Estate of Mario Puzo ("Defendant")

answers the First Amended Complaint dated as of April 2, 2012 (the "FAC") as follows:

       1.      Defendant denies the allegations of paragraph 1 of the FAC and alleges

that, rather than the benign motivation it alleges, Paramount Pictures Corporation

("Paramount") seeks, by this action, to disregard its contractual promises to Mario Puzo

("Puzo") and, by its threats of punitive and treble damages, to coerce Puzo's children into

ceding valuable rights to Paramount without compensation.

       2.      Defendant denies the allegations of paragraphs 2 and 3 of the FAC, except

that Puzo did enter into a written contract of adhesion with Paramount in 1969, prepared

entirely by Paramount on Paramount's printed form, and that, in exchange for a minimal

payment, this agreement granted Paramount certain rights in "The Godfather," but Puzo

expressly deleted and excluded from the granted rights the right "to publish said work

and/or any version or adaptations thereof, or any part or parts thereof, and to vend copies

thereof." Not being granted to Paramount, such excluded rights were reserved in Puzo,

including the right to publish books that include Puzo's characters from "The Godfather"

in new and different situations. Defendant alleges that this deletion and reservation of

such book publishing rights in the 1969 Agreement was well known to Paramount in its

original complaint when it falsely pleaded the supposed content of that agreement.

3.    Answering paragraph 4 of the FAC, Defendant denies that Paramount

acquired the rights it claims and denies that "Godfather 3" was highly acclaimed.

4.    Answering paragraph 5 of the FAC, Defendant denies that, at the time

alleged, Defendant expressed interest in creating and publishing more than one sequel

novel to "The Godfather."

5.    Answering paragraph 6 of the FAC, Defendant denies that Paramount's

motivation for the 2002 memorandum was as alleged or that Paramount has fully or

correctly characterized the content of that memorandum. Defendant alleges that

Paramount's self-serving motivation was to coerce Puzo's children into ceding to

Paramount the motion picture rights in the first sequel novel without compensation.

6.    Defendant denies the allegations of paragraph 7 of the FAC, except that it

did publish "The Godfather's Revenge." Defendant alleges that Paramount has known of

that sequel novel since 2006 and, prior to the filing of this action, made no objection to its

publication.

7.      Answering paragraph 8 of the FAC, Defendant denies that it has only "now" informed Paramount that it intended to publish another "Godfather" sequel and alleges that, during 2010 and 2011, it repeatedly informed Paramount in writing of its intention to enter into an agreement with a book publishing company for the publication of another "Godfather" novel.  Copies of these notifications to Paramount are attached as Exhibits "A" and "B" hereto and incorporated by reference herein.  Until December 2011, after the publishing contract had been signed, Paramount made no objection to the intended publication or defendant's making of such a publishing contract.

8.      Defendant denies the allegations of paragraph 9 of the FAC, except that, for years prior to cancellation of Paramount's rights for its breach and repudiation of the 1969 Agreement, as alleged in the counterclaims filed in this action, Defendant had asserted that it had the right to publish sequels to "The Godfather."  Prior to such cancellation of Paramount's rights, Defendant could not convey motion picture rights in sequel novels to any third party, because Paramount had motion picture rights in the characters that appeared in the original book "The Godfather."  However, Paramount had no rights in new characters or original story material created by writers hired by defendant and included in sequel novels, such as new and different situations involving those original characters or new characters or stories.  Accordingly, Paramount did not own the motion picture rights in such sequel novels.

9.      Defendant denies the allegations of paragraph 11 of the FAC, including the allegation of Paramount's supposed feelings of "respect" for Puzo's contributions, and alleges that Paramount has no such respect and after Puzo's death has repeatedly

attempted to coerce Puzo's children into ceding valuable rights to Paramount without compensation, has, in effect, sued Puzo's children in this action as such a coercive tactic, filing this action seeking punitive and treble damages against Puzo's children, without even a prior warning or notice.

10.     Defendant denies the allegations of paragraphs 12 and 13 of the FAC, except that Paramount has purported to register the title of Puzo's novel "The Godfather" as a trademark.  Defendant alleges that Paramount's "Godfather" trademarks are not valid and that neither such trademarks nor any other right of Paramount can preclude use of the words "The Godfather" in the title of books defendant is entitled to publish and that Paramount's registration of such marks should be cancelled and that, in any event, Paramount has no right to any "distinctive look" of the words "The Godfather" or the name "Mario Puzo" or of any other word or name.

11.     Answering paragraphs 14 and 17 of the FAC, Defendant denies that it has committed or has announced plans to commit any infringing acts whatsoever.

12.     Answering paragraph 19 of the FAC, Defendant incorporates and repleads its response to the paragraphs incorporated by reference.

13.     Defendant denies each and every allegation of paragraphs 20, 21, 22, 23, 24, 25, 26, 28, 29 and 30 of the FAC, except that Paramount acquired certain rights in "The Godfather" pursuant to its 1969 contract of adhesion with Puzo and, subject to defendant's rights, including book publishing rights and rights of cancellation, the copyright in three "Godfather" films is presently registered in Paramount's name.

14.   Answering paragraph 31 of the FAC, Defendant repleads its response to the paragraphs incorporated by reference.

15.   Answering paragraph 32 of the FAC, Defendant denies the validity of Paramount's trademarks and the propriety and truth of its trademark applications.

16.   Defendant denies each and every allegation of paragraphs 33, 34 and 35 of the FAC.

17.   Answering paragraph 36 of the FAC, Defendant repleads its response to the paragraphs incorporated by reference.

18.   Defendant denies each and every allegation of paragraphs 37, 38 and 39 of the FAC.

19.   Answering paragraph 40 of the FAC, Defendant repleads its response to the paragraphs incorporated by reference.

20.   Answering paragraphs 41 and 42 of the FAC, Defendant denies that the allegations of these paragraphs fully or accurately set forth the disputes between defendant and Paramount.

21.   Defendant denies each and every allegation of paragraphs 43 and 44 of the FAC and alleges that Paramount's claims are not asserted in good faith, creating a supposed controversy that is not in fact "actual" or bona fide.

22.   Defendant incorporates by reference herein each and every allegation of its First Amended and Supplemented Counterclaim as if repleaded herein.

## AFFIRMATIVE DEFENSES

1.     Paramount's claims with respect to any previously published sequel novel, and the use of Paramount's alleged trademarks in connection with any such novel, are barred by the statute of limitations.

2.     All of Paramount's claims are barred by laches.

3.     All of Paramount's claims are barred by waiver and consent.

4.     All of Paramount's claims are barred by estoppel.

5.     All of Paramount's claims are barred by its own unclean hands.

6.     The 1969 Agreement is a contract of adhesion prepared entirely by Paramount on Paramount's printed form.  If the 1969 Agreement were construed as Paramount purports to claim, it would be procedurally and substantively unconscionable and unenforceable.

7.     All of Paramount's claims are barred by its own acts of willful and material breach and repudiation of the agreements between Mario Puzo and Paramount.

## FIRST AMENDED AND SUPPLEMENTED COUNTERCLAIMS

As and for its counterclaims against Paramount, Defendant and Counterclaimant (the "Puzo Estate") alleges the following:

## FACTS RELEVANT TO EACH CLAIM

1.     By 1967, Mario Puzo ("Puzo"), an American author, had written and published short stories and two critically acclaimed novels "The Fortunate Pilgrim" and "The Dark Arena."  In that year, Puzo entered into a written agreement with Paramount Pictures Corporation ("Paramount"), a motion picture company with its principal place of

business in California. That agreement (the "1967 Agreement") was entirely prepared by Paramount and gave Paramount an option to enter into an agreement with Puzo to acquire certain rights in Puzo's third novel, "The Godfather." The contract to which Paramount's option applied was also prepared by Paramount and was on Paramount's standardized, printed form. It broadly defined the rights Paramount could acquire; but, by interlineation, it excluded the right "to publish said work and/or any versions or adaptations thereof, or any part or parts thereof, and to vend copies thereof."

      2.     In 1969, Puzo and Paramount entered into another written contract under which Paramount did acquire rights in respect of "The Godfather" (the "1969 Agreement"). The 1969 Agreement was prepared entirely by Paramount on Paramount's standardized, printed form. The form gave Paramount broadly defined rights in "The Godfather," but again, by interlineation, the 1969 Agreement excluded from Paramount's rights the right "to publish said work and/or any versions or adaptations thereof, or any part or parts thereof, and to vend copies thereof."

     The book publishing rights, excluded from Paramount's printed form, were reserved in Puzo and were intended to include book publishing rights in all parts and elements of "The Godfather" such as its characters and, inter alia, book publishing rights in any book depicting characters that were "part" of "The Godfather" in new and different situations, i.e., sequels. The 1969 Agreement permitted Paramount to issue only literary material not exceeding 7500 words for purposes of promoting its films.

     Pursuant to the 1969 Agreement, Puzo executed another written document (the "Confirmation") again on Paramount's printed form, confirming Paramount's rights

under the 1969 Agreement and, once again, striking from those rights the right "to publish said work and/or any versions or adaptations thereof, or any part or parts thereof, and to vend copies thereof."

Under the 1969 Agreement, Puzo was also paid $50,000 (plus up to an additional $25,000 depending on book sales). This was but a small fraction of the reasonable value of the rights Paramount acquired under that agreement.

Pursuant to the 1969 Agreement, Paramount produced and distributed a motion picture version of "The Godfather," which became an enormous commercial success. Paramount is still exploiting that film in various media.

3.    Under the 1969 Agreement, Paramount also obtained the right to produce sequels to "The Godfather." In 1971, Paramount entered into a written contract with Puzo for Puzo to write a sequel to "The Godfather" in screenplay form (the "Godfather II Sequel Agreement"). Puzo's screenplay became a sequel motion picture entitled "Godfather II," depicting characters that were part of "The Godfather" in new and different situations.

Since those situations occurred before the action in "The Godfather," what Puzo wrote for Paramount could be called a "prequel," rather than a "sequel." But, this counterclaim refers to any work depicting characters that were part of "The Godfather" in new and different situations as a "sequel," whether those situations occurred before or after the action depicted in "The Godfather."

In making the Godfather II Sequel Agreement, Paramount recognized that Puzo retained book publishing rights in "The Godfather" characters in new and different

situations; and, even though Puzo was requested, retained and paid by Paramount to write this sequel, the contract provided that Puzo had the right to publish a novel based on his sequel screenplay.

4.     In 1977, Paramount entered into another written contract with Puzo for Puzo to write a "treatment" for still another sequel to "The Godfather," which became "Godfather III" (the "Godfather III Treatment Contract"). Again, Paramount recognized that Puzo retained all book publishing rights in characters that were part of "The Godfather" in new and different situations; and, even though the writing of this sequel, like the writing of the sequel that became "Godfather II," was commissioned and paid for by Paramount, the Godfather III Treatment Contract again provided that book publishing rights in the sequel treatment were reserved in Puzo.

5.     In 1986, Puzo entered into still another written contract with Paramount, this time for Puzo to write a sequel screenplay for "Godfather III" (the "Godfather III Sequel Agreement"). Once again, Paramount recognized that Puzo had retained all book publication rights in the "Godfather" characters and, like the Godfather II Sequel Agreement and the Godfather III Treatment Contract, the Godfather III Sequel Agreement also provided that Puzo, rather than Paramount, would have book publishing rights in Puzo's sequel screenplay for "Godfather III," even though, once again, Paramount was paying to have the sequel written.

6.     In addition to the 1967 and 1969 Agreements themselves, the parties' course of conduct during Puzo's lifetime, such as (a) Paramount's recognition that Puzo retained book publishing rights in the characters that were a part of "The Godfather,"

(b) the three sequel agreements alleged hereinabove, all of which reserved book publishing rights in Puzo, even though each of these sequels was commissioned and paid for by Paramount, and (c) Paramount's failure ever to make any of its present claims while Puzo was alive, evidenced the parties' construction of the 1969 Agreement as one reserving exclusive book publishing rights in Puzo, including such rights with respect to books that were sequels to "The Godfather."

7.      The Puzo Estate is informed and believes and, on that ground, alleges that "The Godfather" and its two sequel films, all developed from the rights granted by Puzo under the 1969 Agreement, generated revenue for Paramount in excess of $1 billion and that the reasonable value of the rights acquired from Puzo under the 1969 Agreement exceeded $100 million.

8.      Puzo died in 1999.  His heirs are his children.  His son, Anthony Puzo, is the Executor of his Estate.  Prior to Puzo's death, Paramount never claimed that it owned book publishing rights in sequels to "The Godfather" or made any of its other claims in this action.  After Puzo's death, however, things were different.

9.      In 2002, when the Estate sought to publish a sequel book called "The Godfather Returns," Paramount claimed for the first time that it, rather than Puzo had exclusive book publishing rights in any writing that included the "Godfather" characters, that it could have such books written and could publish them, and that the Estate could not.  The Estate disagreed; but, to allow publication of such a book without costly litigation with Paramount and its publishers, it agreed that, as to this book only, Paramount could have motion pictures rights in this one sequel.

10.     Still, Puzo's children hoped that Paramount would reverse its position reneging on its promises to their father.  In 2006, the Puzo Estate hired and paid an author to write another sequel novel called "The Godfather's Revenge."  Although Paramount was fully aware of the publication of this sequel in 2006, it made no objection or complaint to the Puzo Estate about the publication at that time, or at any time during the next 5 years, creating the reasonable inference that it had, in fact, reconsidered its position and had no claim with respect to such publications.

11.     Prior to his death Puzo had written another screenplay for a sequel to "The Godfather."  This was a "spec" screenplay, written by Puzo on his own, without any request, contract or payment from Paramount.  In or about 2009, the Puzo Estate commissioned and paid an author to write a sequel novel based on part of Puzo's "spec" screenplay.  The novel was ultimately entitled "The Family Corleone."

In February 2010, encouraged by Paramount's asserting no claim with respect to "The Godfather's Revenge," the Puzo Estate advised Paramount in writing that it intended to enter into a publishing contract for publication of another sequel novel that became "The Family Corleone."  The Estate asked if Paramount was interested in negotiating a deal for film rights in this sequel book.  This notice to Paramount is attached hereto as Exhibit "A."

For over a year, the Puzo Estate received no response to its notice to Paramount that it was about to contract for the publication of "The Family Corleone," just as it had received no claim from Paramount with respect to publication of "The Godfather's Revenge."  The Estate reasonably assumed that, as in the case of "The Godfather's

Revenge," Paramount had no claim with respect to publication of "The Family Corleone."

In May 2011, the Puzo Estate again notified Paramount that it was proceeding with publication of this sequel novel, again asking if there might be interest in a deal for film rights. This second notice to Paramount is attached hereto as Exhibit "B."

It was not until December 2011, almost two years after the Puzo Estate's initial notice to Paramount that it was about to contract for publication of "The Family Corleone," and after the Estate had already executed binding agreements granting publishing companies the right to publish that book (the "Publishing Contracts"), that Paramount finally objected to that publication.

12.     Puzo and the Puzo Estate, representing Puzo's children, have done everything required of them under the 1969 Agreement, are in no manner or respect in breach thereof and have, at all relevant times, been ready, willing and able fully to perform that Agreement.

13.     During 2011 and 2012, Paramount committed acts in willful and material breach and repudiation of the 1969 Agreement. Those acts of breach and repudiation included the following:

a.      Starting in December 2011 and continuing thereafter in 2012, Paramount repudiated Puzo's fundamental rights under the 1969 Agreement by unequivocally asserting to the Estate, contrary to the 1969 Agreement and the parties' course of conduct during Puzo's lifetime, that Paramount was automatically the exclusive owner of all book publishing rights in any sequel to "The Godfather," even if written by

Puzo without any contract with, or payment from, Paramount, or written by an author

commissioned and paid by the Puzo Estate, and that neither Puzo, nor the Puzo Estate,

nor any publisher had any such rights or any right to publish "The Family Corleone" or

any other book that is a sequel to "The Godfather."

       The reasonable interpretation of Paramount's statements, and the Puzo

Estate's understanding of those statements, was that Paramount was absolutely and

unequivocally demanding rights it did not have under the 1969 Agreement and was

absolutely and unequivocally disavowing, and insisting that it would not honor or abide

by, Puzo's book publishing rights under that agreement.

       b.    Paramount's conduct went beyond repudiating the Estate's rights to

publish books, and it did not merely assert its spurious claims in a lawsuit. Its

repudiation was accompanied by Paramount's actual breach of the express and implied

provisions of the 1969 Agreement by at least two other forms of conduct.

       First, Paramount materially interfered with, frustrated and sought to prevent

the Estate's exercise of its contract rights by claiming directly and falsely to the

companies that had agreed to publish "The Family Corleone" (the "Publishers") that

neither the Publishers nor the Estate had any right to publish "The Family Corleone," and

that, if they published that book, as Paramount knew the Publishing Contracts required,

they would be violating Paramount's rights and would incur substantial liability to

Paramount. This conduct by Paramount was a breach of the express terms of the 1969

Agreement as well as of the implied covenant of good faith and fair dealing inherent in

every contract.

Second, having been so threatened by Paramount, and fearing a lawsuit by Paramount, the Publishers would not publish "The Family Corleone," unless Paramount first provided its consent to that publication, a condition to the exercise of the Puzo Estate's rights under the 1969 Agreement that was not contained in those contracts and that neither Paramount nor the Publishers had the right to impose on the Puzo Estate.

Imposing that condition was, in itself, a breach of the 1969 Agreement. But Paramount imposed still further improper conditions on the Puzo Estate's exercise of its book publishing rights. Paramount refused to provide the required consent to publication of "The Family Corleone," which had been made a condition to the publication, unless the Estate paid into an escrow all funds theretofore or thereafter paid to the Puzo Estate by the Publishers in respect of "The Family Corleone." That added obligation was not in the 1969 Agreement, and neither Paramount nor the Publishers had any right to impose that improper obligation on the Puzo Estate as a condition to exercise of its publishing rights under that agreement.

In order to obtain the publication of "The Family Corleone," to which it had the contract right without fulfilling that additional and onerous financial condition, the Puzo Estate was forced to accede to the improper conditions that Paramount consent to the publication, and also that it escrow all the proceeds of publication, which was a further breach by Paramount of the express and implied provisions of the 1969 Agreement.

c.     Thereafter, Paramount expanded its repudiation by claiming falsely that, without making any further contract with the Puzo Estate or providing any

compensation to the Estate, Paramount was automatically the exclusive owner of all motion picture rights in "The Family Corleone" and in all books that are sequels to "The Godfather," including all the original, new characters and original, new story material in such sequels not commissioned or paid for by Paramount but written by Puzo or by authors commissioned and paid by his Estate with no Paramount contract or payment.

That unfair claim asserted additional rights that Paramount did not have and further repudiated and violated Puzo's rights and those of his Estate under the 1969 Agreement. Nothing in the 1969 Agreement or any other agreement gave Paramount automatic ownership of such newly created characters or story material not written under contract with Paramount.

Paramount's acts of breach and repudiation occurred in and from California.

14. The rights under the 1969 Agreement that were disavowed, repudiated, interfered with and violated by Paramount were rights of fundamental and critical importance to Puzo as a novelist and are fundamental and critical to his Estate, as the owner and guardian of Puzo's body of work as a novelist. Those rights were and are of the essence of the 1969 Agreement. They were, in fact, the only executory rights of the Puzo Estate and the only executory obligations of Paramount under the 1969 Agreement.

Puzo said that "Books are my world" in explaining that Paramount did not get book publishing rights and would not ever get such rights. Neither the 1967 Agreement, nor the 1969 Agreement, nor the Godfather II Sequel Agreement, nor the Godfather III Treatment Contract, nor the Godfather III Sequel Agreement would have been made had

Paramount ever asserted its present claims at the time those agreements were made or at any time while Puzo was alive.

Depriving the Puzo Estate of those essential rights substantially impairs Puzo's reasonable and basic expectations in entering into the 1969 Agreement and the reasonable and basic expectations of his Estate in abiding by that Agreement over the years since Puzo's death.

15.    Even though such a showing is not required for discharge of a party's obligations and prospective cancellation of a contract for material breach and repudiation, damages are not an adequate remedy for Paramount's acts.  The rights Paramount has repudiated, violated and interfered with are unique and creative intellectual property rights, the loss of which cannot be adequately or fully measured or compensated for in dollars.  Nor can dollars adequately or fully measure or compensate the Puzo Estate for the harm to its relationship with the Publishers or to its ability to deal with other publishers and with authors, or resulting from the lessened sales and value of "The Family Corleone" by reason of Paramount's widely publicized claims, or from the burden of having to continue in a relationship with an entity that, once Puzo died, so egregiously reneged on its promises to him.

### FIRST COUNTERCLAIM
### (Declaratory Judgment: Cancellation of Contract Rights)

16.    Defendant and Counterclaimant incorporates by reference paragraphs 1 through 15 of this Counterclaim as though fully set forth herein.

17.     As a consequence of the foregoing facts, actual controversies have arisen between the parties as to their future rights and obligations, if any, under the 1969 Agreement and Confirmation.

18.     The Puzo Estate contends that, by reason of the foregoing facts, the Puzo Estate, rather than Paramount, is the exclusive owner of book publishing rights in books that depict characters that are part of "The Godfather" in new and different situations, that the Puzo Estate has the exclusive right to publish "The Family Corleone" and any other book that is a sequel to "The Godfather," and that the Puzo Estate, rather than Paramount, owns the motion picture and allied rights in original, new characters and original, new story material in such books created by Puzo or by an author retained and compensated by the Puzo Estate. Paramount contends to the contrary.

19.     The Puzo Estate also contends that, by reason of Paramount's acts of material breach and repudiation of the 1969 Agreement alleged hereinabove, any further obligations of the Puzo Estate under the 1969 Agreement and Confirmation have been discharged, and that the Puzo Estate has, in addition to its other rights and remedies, the right to prospectively cancel and terminate Paramount's future rights under the 1969 Agreement and Confirmation, without impairing Paramount's motion picture and allied rights in films it has already produced. The Puzo Estate, by this counterclaim, exercises that right of prospective cancellation and termination and asks the Court to declare such future rights of Paramount canceled and terminated. Paramount contends that the Puzo Estate has no such right.

20.     A declaration by this Court is necessary so that the parties can know their rights with respect to the foregoing controversies.

## SECOND (ALTERNATIVE AND CONDITIONAL) COUNTERCLAIM
### (Rescission and Restitution)

21.     Defendant and Counterclaimant incorporates by reference paragraphs 1 through 15 of this Counterclaim as though fully set forth herein.

22.     The Puzo Estate's First Counterclaim seeks cancellation and termination of future rights and obligations under the 1969 Agreement.  It is not a claim for rescission. If, however, the Court were to rule that the Puzo Estate's claim is actually a claim for rescission or that the Puzo Estate can put an end to the 1969 Agreement only by a claim to rescind it, then, in that event:

a.     The Puzo Estate will return to Paramount the $50,000 and any added sum based on book sales that Paramount paid Puzo under the 1969 Agreement;

b.     Rescission and restitution require restoration to the Puzo Estate of the reasonable value of the rights acquired from Puzo by Paramount under the 1969 Agreement; and

c.     The reasonable value of the rights Paramount acquired from Puzo under the 1969 Agreement is in excess of $100 million.

## THIRD COUNTERCLAIM
### (Breach of Contract)

23.     Defendant and Counterclaimant incorporates by reference paragraphs 1 through 15 of this Counterclaim as though fully set forth herein.

24.    As a direct and proximate result of Paramount's material breach and repudiation of the 1969 Agreement, the Puzo Estate has incurred and will incur monetary damages in a sum not yet known.

## FOURTH COUNTERCLAIM
### (Tortious Interference with Contract)

25.    Defendant and Counterclaimant incorporate by reference paragraphs 1 through 15 of this Counterclaim as though fully set forth herein.

26.    During 2011, the Puzo Estate entered into the Publishing Contracts with Grand Central Publishing Co. and an English subsidary of Random House (the "Publishers"), pursuant to which the Publishers agreed to publish "The Family Corleone," including characters that were part of "The Godfather" in new and different situations (the "Publishing Contracts").

27.    During 2012, knowing of the Publishing Contracts, Paramount falsely asserted to the Publishers that neither they nor the Puzo Estate had any right to publish "The Family Corleone."  By making that false claim, known to Paramount to be false when made, Paramount sought to induce the Publishers to withhold their performance of the Publishing Contracts, and wrongfully interfered with and frustrated the Estate's exercise of its contractual right to publish "The Family Corleone."

As a proximate result of Paramount's threats and false claims, the Publishers declined to perform their obligations under the Publishing Contracts unless they received Paramount's consent to publish "The Family Corleone," an added condition to their required performance under the Publishing Contracts, which the Publishers were not

entitled to impose on the Puzo Estate and thus, in itself, a breach and repudiation by the Publishers of the Publishing Contracts.

And Paramount's conduct caused still another breach and repudiation by the Publishers. Paramount would only provide the consent required by the Publishers, and would therefore only permit publication of "The Family Corleone," on condition that the Puzo Estate pay all the money it had received and will, in the future, receive from the Publishers in respect of "The Family Corleone," into an escrow, a condition neither Paramount nor the Publishers had the right to impose and to which the Estate was forced to agree in order to obtain the publication to which it was entitled under the Publishing Contracts and the 1969 Agreement with Paramount.

The Publishers requiring Paramount's consent to publishing "The Family Corleone" and also requiring the payment of all monies into escrow, as conditions to performing their obligations under the Publishing Contracts, was, in each case, a breach and repudiation of the Publishing Contracts; and each such breach and repudiation was proximately caused by the wrongful conduct of Paramount

28.     As a direct and proximate result of Paramount's wrongful conduct, the Puzo Estate has incurred and will incur monetary damages in a sum as yet unknown.

29.     Paramount's conduct was willful, malicious and oppressive, entitling the Puzo Estate to punitive damages.

WHEREFORE, the Estate prays judgment as follows:

1.     That Paramount take nothing by its complaint;

2.     That the Court declare that the Puzo Estate is entitled to publish and vend books including the characters and situations in "The Godfather" and depicting such characters that are a part of "The Godfather" in the same, similar or different situations, that Paramount has no such book publishing rights and that Paramount does not automatically own motion picture rights in new characters or new story material not paid for by Paramount and created by Puzo or by authors commissioned and paid for by the Puzo Estate, and included in books that are sequels to "The Godfather";

3.     That the Court declare that, by reason of Paramount's material breach and repudiation of the 1969 Agreement, the Puzo Estate's obligations under that Agreement are discharged and Paramount's future rights under that Agreement are canceled and terminated;

4.     That, in the event the Court rules that the Puzo Estate's claim for cancellation is actually a claim for rescission or that the Estate can put an end to the 1969 Agreement only by a claim for rescission, then the Puzo Estate prays for an order rescinding the 1969 Agreement and restoring to Paramount the $50,000 and any added sum paid Puzo under that agreement by reason of book sales, and ordering restitution and restoration by Paramount to the Puzo Estate of the reasonable value of the rights acquired by Paramount under the 1969 Agreement;

5.     For damages in such sum as may be determined;

6.     For punitive damages;

7.     For the Puzo Estate's attorneys' fees; and

8.      For costs of suit and such other relief as the Court shall deem proper.


Dated: May 22, 2012                    Bertram Fields
       Los Angeles, California         GREENBERG GLUSKER FIELDS
                                         CLAMAN & MACHTINGER LLP
                                       1900 Avenue of the Stars, 21st Floor
                                       Los Angeles, CA  90067
                                       P:     310.553.3610
                                       F:     310.553.0687
                                       bfields@ggfirm.com
                                               and
                                       David Boies
                                       Motty Shulman
                                       BOIES, SCHILLER & FLEXNER LLP
                                       333 Main Street
                                       Armonk, N.Y.  10504
                                       P:     914.749.8200
                                       F:     914.749.8300
                                       dboies@bsfllp.com
                                       mshulman@bsfllp.com


                                       By: _____
                                           Bertram Fields
                                           *Attorneys for Anthony Puzo, as Executor*
                                           *of the Estate of Mario Puzo*