UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION<br>                    Plaintiff and Counter-<br>                    Defendant,<br><br>                    v.<br><br>ANTHONY PUZO, AS EXECUTOR OF THE<br>ESTATE OF MARIO PUZO<br>                    Defendant and Counter-<br>                    Claimant. | No. 12 Civ. 1268 (AJN)<br><br>ECF CASE |

## DECLARATION OF NICHOLAS F. DAUM IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS AMENDED AND RESTATED COUNTERCLAIM

NICHOLAS F. DAUM declares, under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am admitted to practice *pro hac vice* before this Court in connection with the above-captioned matter and am an attorney associated with Kendall Brill & Klieger LLP, attorneys for plaintiff Paramount Pictures Corporation.  I respectfully submit this declaration in support of plaintiff Paramount Pictures Corporation's Motion to Dismiss Defendant's Amended and Restated Counterclaim.

2.      Attached hereto as Exhibit A is a true and correct copy of the agreement dated September 3, 1969, between Mario Puzo and Paramount Pictures Corporation (the "Agreement").

3.      Attached hereto as Exhibit B is a true and correct copy of the grant of rights dated November 28, 1969, from Mario Puzo to Paramount Pictures Corporation (the "Grant").

4.      Attached hereto as Exhibit C is a true and correct copy of the Interim Settlement Agreement, dated as of March 22, 2012, entered into between the parties in this matter.

109333.1

5.      Attached hereto as Exhibit D is a true and correct copy of the file of the "writers agreements" entered into between the late Mario Puzo and Paramount Pictures Corporation, in connection with screenplays and treatments created as works for hire in connection with films related to *The Godfather*.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 12, 2012, at Los Angeles, California.

/s Nicholas F. Daum_____

# EXHIBIT A

AR 3-15-62

AGREEMENT made this 3rd   day of   September  , 19<sub>69</sub> , between

MARIO PUZO------------------------------------------------------------

hereinafter called the AUTHOR, and

PARAMOUNT PICTURES CORPORATION--------------------------------

hereinafter called the PURCHASER.

FIRST:          The Author hereby warrants:

(a)   That the Author is the sole author of a certain  novel----------- entitled THE GODFATHER (previously entitled "MAFIA")------------------ (hereinafter called "said work"), which work is wholly original with the Author and has not been copied in whole or in part from any other work, and that neither said work nor any version or adaptation thereof has ever been published anywhere throughout the world, except as hereinafter mentioned.

(b)   That the Author is the sole owner of all rights hereinafter conveyed, granted and assigned to the Purchaser and that there is not now valid or outstanding any right, title or interest in or to or in connection with said work adverse to or inconsistent with the rights hereinafter conveyed, granted and assigned to the Purchaser, or by which any of said rights or the enjoyment thereof by the Purchaser, might be invalidated, impeded or impaired.

(c)   That no claim has been made against the Author, and that the Author knows of no claim, that said work infringes the copyright or violates the right of first publication or any other rights in any other work and/or of any person, firm or corporation whatsoever.

(d)   That said work was first published with due and proper notice of copyright in the name of Author in the United States of America by G.P. Putnam's Sons as a book on March 10, 1969 and, as so published and copyrighted, was registered for copyright in the United States Copyright Office in the name of Author under Entry Number A:58755.

1

AR 5-1-54

**SECOND:**      The Author hereby conveys, grants and assigns to the Purchaser said work and the manuscripts thereof, together with any and all copyrights therein and all rights now known or hereafter accruing therein and thereto, forever and throughout the world; together with the sole and exclusive right to use said work, in whole or in part, in whatever manner the Purchaser may desire, including, but not limited to, the sole and exclusive rights:  to make and cause to be made literary and dramatic and other versions and adaptations of every kind and character of said work or any part or parts thereof and/or any or all of the characters created therein; to produce, perform and represent said work and/or any versions or adaptations thereof, or any part or parts thereof, in any manner or form the Purchaser may desire; to adapt, arrange, change, interpolate in, transpose, add to and subtract from said work to such extent as the Purchaser, in its sole discretion, may desire in connection with any use which the Purchaser may make of said work; to translate said work and/or any versions or adaptations thereof or any part or parts thereof into any and all languages; to use the titles of said work, or any simulations thereof or any other titles which the Purchaser may select, in connection with any uses of said work or any versions or adaptations thereof or any part or parts thereof; to use any or all of the characters created therein and said titles or any simulations thereof in connection with any other works, whether or not the same are based upon or adapted from said work or any part or parts thereof; to combine said work and any part or parts thereof with any other works for any purpose which the Purchaser may desire; to record, reproduce and transmit sound, including spoken words, dialogue, music and/or songs, whether extracted from said work or otherwise, and to change such spoken words, dialogue, music and/or songs, if extracted from said work, and/or to interpolate other spoken words, dialogue, music and/or songs, in or in connection with or as part of the production, reproduction, transmission, exhibition and/or representation of any versions or adaptations which the Purchaser may make of said work, and to make, use, license and vend any and all records or other devices required or desired for any of the aforesaid purposes; ~~to publish said work and/or any versions or adaptations thereof, or any part or parts thereof, and to vend copies thereof~~; to broadcast by radio broadcasting said work and/or any versions or adaptations and/or any part or parts thereof; to transmit said work and/or any versions or adaptations thereof or any part or parts thereof by television or any other process now known or hereafter to be devised; to copyright, vend and license said work and any such versions or adaptations or any part or parts thereof throughout the world.

SEE      **THIRD:**      ~~The Author agrees that the conveyance, grant and assignment herein made~~
PARA-  to the Purchaser in connection with said work shall also include such a conveyance, grant and
GRAPH  assignment with respect to all versions and adaptations of said work, and the Author further
THIRD  agrees to provide the Purchaser with documents evidencing such conveyance, grant and
SUB-   assignment as to each such version and adaptation, whenever request therefor is made
STI-   by the Purchaser. If any changes in, revisions of, additions to or deletions from said work,
TUTED  including its title, have heretofore been made or may hereafter be made for the purposes
       of publication, translation, dramatization or otherwise, or if any other versions have
       heretofore been made or may hereafter be made (in any form whatsoever), whether such changes,
       revisions, additions, deletions and other versions have originated with the Author or others under
       a license from the Author, the Purchaser shall have the same rights in and to such changes,
       revisions, additions, deletions and other versions as have been conveyed, granted and assigned
       hereunder to the Purchaser in and to said work; it being understood and agreed that all such
       changes, revisions, additions, deletions and other versions upon the creation thereof shall be and
       ~~constitute a part of said work.~~

**FOURTH:**      The Author agrees that the Author will, prior to the expiration of any copyright or copyrights in said work or any versions or adaptations thereof (as the same may be extended), renew or extend or procure the renewal or extension of any such copyright or copyrights, and will convey, grant and assign to the Purchaser such renewal or extension of copyright and the rights herein conveyed, granted and assigned for such renewal or extended term. The Author hereby irrevocably appoints the Purchaser as the attorney-in-fact of the Author to execute, deliver and record, on behalf of the Author and in the name of the Author or otherwise, any and all documents necessary or proper to secure the renewal or extension of any such copyright or copyrights and all

2

Exhibit A      Page 3

AR 9-30-54

rights therein and thereto for the term of such renewal or extension, and to execute, deliver and record, on behalf of the Author and in the name of the Author or otherwise, any and all assignments and other documents necessary or proper to convey, grant and assign to the Purchaser such renewal or extension of copyright and the rights herein conveyed, granted and assigned, for the term of such renewal or extension. The Author agrees that, in the event that the present Copyright Law of the United States of America, or of any other country where said work and such versions or adaptations thereof are or may hereafter be protected by copyright, shall be amended or changed or a new Copyright Law enacted, so that the term of copyright is extended or enlarged, the Purchaser shall forthwith and automatically become entitled to such renewal or extension of copyright and all the rights herein conveyed, granted and assigned to the Purchaser.

FIFTH:        The Author agrees to execute and deliver to the Purchaser and to provide the Purchaser with any and all further documents necessary or proper to evidence or secure to the Purchaser the copyright and the rights herein conveyed, granted and assigned to the Purchaser and to perfect the record thereof.

SIXTH:        The Author further agrees to indemnify and save harmless the Purchaser, its successors and assigns and its and their licensees, against all damages, losses, settlements, judgments, expenses and costs, including reasonable counsel fees, suffered, made, incurred or assumed by the Purchaser or its successors or assigns or its or their licensees, in its or their discretion and without obtaining any consent in connection therewith, growing out of or by reason of any breach of any warranty, undertaking, representation, agreement or certification made or entered into herein or hereunder by the Author.

SEVENTH:        (a)   The Author hereby grants to the Purchaser the right to use, and to license, cause or permit others to use, the name of the Author in connection with any use, version or adaptation which the Purchaser may make of said work or any version or adaptation thereof and in connection with the advertising or publicity thereof, whether or not the same shall be substantially based upon said work or any such version or adaptation thereof. The Author agrees that, except as provided in Subdivision (b) of this Paragraph SEVENTH, the Purchaser shall not be required to announce the name of the Author in or in connection with any such use, version or adaptation, or in connection with any advertising or publicity issued by the Purchaser in connection with any such use, version or adaptation, whether or not the Purchaser shall elect to announce in or in connection with any such use, version or adaptation or such advertising or publicity thereof the name or names of the author or authors of the screenplay or other version or adaptation thereof.

        (b)   The Purchaser agrees, however, to announce on the film of any motion picture photoplay that may be produced by it hereunder and substantially based upon or adapted from said work or any version or adaptation thereof, substantially incorporating the plot, theme, characterizations, motive and treatment of said work or any version or adaptation thereof, that said motion picture photoplay is based upon or adapted from or suggested by a work written by the Author, or words to that effect, and, if the Purchaser shall so elect, upon such other material as may be incorporated in any such motion picture photoplay, with or without the names of the authors of such other material.

        (c)   The Author hereby acknowledges that the Author's pseudonym is

and the Author hereby grants to the Purchaser the right also to use the Author's pseudonym in connection with said work. The Purchaser agrees that the Author's pseudonym shall be used in any announcements of the Author's name pursuant to Subdivision (b) of this Paragraph SEVENTH.

        (d)   No casual or inadvertent failure to comply with any of the provisions of this paragraph SEVENTH shall be deemed a breach of this agreement by the Purchaser.

3

AR 5-1-84

**EIGHTH:**        Nothing contained in this agreement shall be construed to be or operate in derogation of or prejudicial to any rights, licenses, privileges or property which the Purchaser may enjoy or to which the Purchaser may be entitled as a member of the public even if this agreement were not in existence, and the Purchaser may exercise such rights, licenses, privileges and property which the Purchaser may enjoy or to which the Purchaser may be entitled as a member of the public as though this agreement were not in existence. The rights granted in this agreement by the Author to the Purchaser and the representations, warranties, undertakings and agreements made in this agreement by the Author shall endure in perpetuity and shall be in addition to any rights, licenses, privileges and property of the Purchaser referred to in the first sentence of this Paragraph EIGHTH.

**NINTH:**        In full consideration for the rights herein conveyed, granted and assigned and agreed to be conveyed, granted and assigned and the representations, warranties, undertakings and agreements made in this agreement by the Author, the Purchaser hereby agrees to pay to William Morris Agency, Inc., 1350 Avenue of the Americas, New York, New York, as agent for the Author, and the Author hereby authorizes the Purchaser to pay to said agent, whose receipt shall be binding upon the Author, upon the execution and delivery hereof, in lawful money of the United States of America, the sum of FIFTY THOUSAND and 00/100 DOLLARS ($50,000.00) less the sum of TWELVE THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($12,500.00), receipt of which is hereby acknowledged, consisting of NINE THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($9,500.00) paid to me upon execution of the option agreement and THREE THOUSAND and 00/100 DOLLARS ($3,000.00) paid to me upon delivery of the novel (to wit: the sum of THIRTY SEVEN THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($37,500.00)). In addition, Purchaser agrees to pay Author's agent as above the additional sums as follows: (i) The sum of FIVE THOUSAND and 00/100 DOLLARS ($5,000.00) if the novel is adopted by any one of the following: Book-of-the-Month Club, Literary Guild Book Club or The Reader's Digest; (ii) The sum of TWENTY-FIVE CENTS ($.25) per copy for each copy of the regular hard cover trade edition sold by the publisher of the novel in the United States and Canada but only during the first three (3) years after first publication, in excess of 50,000 copies and only for the next 100,000 copies, provided, however, it is agreed that the foregoing payment computation shall be made only with respect to sales of the trade edition with respect to which Author is entitled to receive or be credited with royalties, and further provided, that in no event shall Author be entitled to receive under this subparagraph (ii) any sums in excess of TWENTY-FIVE THOUSAND and 00/100 DOLLARS ($25,000.00).

Notwithstanding anything to the contrary contained in this Paragraph NINTH relating to payments to Author, Purchaser agrees that the total amount of such payments to be remitted to Author in any one calendar year shall not exceed TWENTY-FIVE THOUSAND and 00/100 DOLLARS ($25,000.00). Any balance due Author shall be accumulated by Purchaser and paid on the 15th day of January of each succeeding year until such January 15th date is reached when all of such balance has been remitted to Author. All sums accumulated hereunder shall be paid without interest and shall not be deemed to have been held in trust by Purchaser.-----------------------------------------

**TENTH:**        With respect to each payment to be made by the Purchaser pursuant to this agreement, it is expressly understood and agreed that should the Purchaser for any reason whatever fail to make such payment as hereinabove provided, the Purchaser shall not be deemed in default hereunder unless and until, following such failure, the Author shall have given the Purchaser written notice demanding such payment and the Purchaser shall have failed to make such payment within one (1) week after the Purchaser's receipt of said notice. In any event, the Purchaser's liability for any such default and the Author's rights and remedies therefor shall be limited to the payment of money only, not exceeding the amount of any payment provided for in this agreement, and in no event shall any of the rights acquired or to be acquired by the Purchaser hereunder be affected or impaired.

**ELEVENTH:**        Any notice or matter required or desired to be given or submitted hereunder shall be in writing and shall be addressed to the Purchaser, one copy at 1501 Broadway, New York,

4

AR 5-1-64

New York 10036, and one copy at 5451 Marathon Street, Hollywood, California 90038, and shall be addressed to the Author c/o William Morris Agency, Inc., 1350 Avenue of the Americas, New York, New York _____ or to such other addresses as the parties hereto may hereafter designate in writing, and shall be sufficiently given or submitted by personal delivery thereof to the other party at the aforesaid addresses, or by telegraphing or by mailing the same in a postpaid wrapper addressed to the other party as aforesaid, and the date of such delivery, telegraphing or mailing shall be the date of the giving of such notice. In the event that the last day on which the parties hereto are empowered to give notice pursuant to any provisions of this agreement, or to perform any other act which the parties are required or may desire to perform under or in connection with this agreement, should fall on a Saturday, Sunday or holiday, then, in that event, the parties shall have until the end of the first full business day following said Saturday, Sunday or holiday within which to give such notice or to perform such act. It is further agreed that, if any date established by any notice for the commencement of any period or the performance of any other act shall fall on a Saturday, Sunday or holiday, then such commencement date for such period or such date for the performance of any such act shall be extended until the close of the first full business day following said Saturday, Sunday or holiday.

TWELFTH:      The term "Author", as used herein, shall include all the authors of said work named herein, and all the terms, covenants, conditions and other provisions hereof shall be binding upon all such authors, jointly and severally.

THIRTEENTH:      This agreement shall bind and enure to the benefit of the parties hereto, their respective heirs, executors, administrators, sucessors, assigns and licensees, and the rights herein conveyed, granted and assigned, and agreed to be conveyed, granted and assigned, may be freely assigned in whole or in part by the Purchaser, its successors and assigns.


THIRD (Substituted):  The Author agrees that the conveyance, grant and assignment herein made to the Purchaser in connection with said work shall also include such a conveyance, grant and assignment with respect to all versions and adaptations and publications of said work, and further agrees to provide the Purchaser with documents evidencing such conveyance, grant and assignment as to each such version, adaptation and publication, whenever request therefor is made by the Purchaser.  The Author further agrees ~~and warrants~~ that he has not and will not publish or permit the publication of said work or any versions or adaptations thereof unless the same shall be duly copyrighted in the United States of America and duly registered for copyright in the Copyright Office of the United States of America, and that, in all publications of said work and any such versions and adaptations thereof, all provisions of the Universal Copyright Convention will be abided by and conformed to in all respects, and the Author further agrees to notify the Purchaser, or to cause the publisher of said work or any versions or adaptations thereof to notify the Purchaser, whenever the Author or such publisher, as the case may be, shall authorize the publication of said work or any versions or adaptations thereof.

5

FOURTEENTH:  The Author hereby grants to the Purchaser, for
advertising and exploitation purposes, the sole and exclusive
rights, forever and throughout the world, to make, publish and
copyright, or cause to be made, published and copyrighted, in
the name of the Purchaser or its nominee, serially or otherwise,
in any and all languages:  synopses, scenarios and fictionized
versions (each not exceeding seventy-five hundred (7,500) words
in length), with or without illustrations of any type or kind
whatsoever, of any motion picture photoplays made pursuant
to this agreement and based principally upon said work, but with
respect to any motion picture photoplays not based principally
upon said work there shall be no limitation in length; and
picture books, comic books, cartoon books and cartoon strips,
with or without literary matter, captions or dialogue, based
upon, adapted from or suggested by any motion picture photoplays
made pursuant to this agreement.


        IN WITNESS WHEREOF, the parties hereto have duly executed
these presents in the day and year first above written.

                        PARAMOUNT PICTURES CORPORATION

                        By _____

                        Title _____


                        _____
                        MARIO PUZO


CAS/sg


                                6

# EXHIBIT B

AR 3-15-62

KNOW ALL MEN BY THESE PRESENTS, That, for a valuable consideration.
receipt whereof is hereby acknowledged:

FIRST:      The undersigned,   MARIO PUZO————————————————————————————

hereinafter referred to as the AUTHOR, hereby conveys, grants and assigns to PARAMOUNT
PICTURES CORPORATION——————————————————————————————————————————————

hereinafter referred to as the PURCHASER:

(a)        The novel————————————————————————— written by the Author,
entitled THE GODFATHER (previously entitled MAFIA)———————————————
which was first published with due and proper notice of copyright
in the name of Author in the United States of America by G.P. Putnam's
Sons as a book on March 10, 1969, and as so published, was registered
for copyright in the United States Copyright Office in the name of
Author under Entry Number A:58755———————————————————————————————

(hereinafter called "said work"), ~~which work, or any versions or adaptations thereof, has never been published anywhere throughout the world,~~ and the manuscripts thereof, together with any and all copyrights therein and all rights now known or hereafter accruing therein and thereto, forever and throughout the world; together with the sole and exclusive right to use said work, in whole or in part, in whatever manner the Purchaser may desire, including, but not limited to, the sole and exclusive rights: to make and cause to be made literary and dramatic and other versions and adaptations of every kind and character of said work or any part or parts thereof and/or any or all of the characters created therein; to produce, perform and represent said work and/or any versions or adaptations thereof, or any part or parts thereof, in any manner or form the Purchaser may desire; to adapt, arrange, change, interpolate in, transpose, add to and subtract from said work to such extent as the Purchaser, in its sole discretion, may desire in connection with any use which the Purchaser may make of said work; to translate said work and/or any versions or adaptations thereof or any part or parts thereof into any and all languages; to use the titles of said work, or any simulations thereof or any other titles which the Purchaser may select, in connection with any uses of said work or any versions or adaptations thereof or any part or parts thereof; to use any or all of the characters created therein and said titles or any simulations thereof in connection with any other works, whether or not the same are based upon or adapted from said work or any part or parts thereof; to combine said work and any part or parts thereof with any other works for any purpose which the Purchaser may desire; to record, reproduce and transmit sound, including spoken words, dialogue, music and/or songs, whether extracted from said work or otherwise, and to change such spoken words, dialogue, music and/or songs, if extracted from said work, and/or to interpolate other spoken words, dialogue, music and/or songs in or in connection with or as part of the production, reproduction, transmission, exhibition and/or representation of any versions or adaptations which the Purchaser may make of said work, and to make, use, license and vend any and all records or other devices required or desired for any of the aforesaid purposes; ~~to publish said work and/or any versions or adaptations thereof, or any part or parts thereof, and to vend copies thereof;~~ to broadcast by radio broadcasting said work and/or any versions or adaptations and/or any part or parts thereof; to transmit said work and/or any versions or adaptations thereof or any part or parts thereof by television or any other process now known or hereafter to be devised; to copyright, vend and license said work and any such versions or adaptations or any part or parts thereof throughout the world.

(b)        The right, in the name of the Author, when necessary, but for the benefit of the Purchaser, to institute and prosecute any and all actions or proceedings at law or in equity for the violation, impairing or impeding of any of the rights, licenses, privileges and property herein and in the agreement referred to in Paragraph FOURTH hereof between the parties hereto, conveyed, granted and assigned or for the infringement of the copyright in said work through the medium of motion pictures or through any other medium tending to impede, impair or diminish the use and enjoyment by the Purchaser, or any of its successors, assigns or licensees, of such rights, licenses, privileges and property herein and in said agreement conveyed, granted and assigned, and to recover damages and other sums allowed by law or statute therefor, upon condition that the Purchaser indemnify and hold harmless the Author against any court costs by reason of such action or proceeding.

1

Exhibit B      Page 8                                    11-3-6 /

AR 5-1-64

SECOND:    The Author hereby agrees:
(a)  SEE Paragraph SECOND (a) below.

~~(a)       That the conveyance, grant and assignment herein made to the Purchaser in~~
connection with said work shall also include such a conveyance, grant and assignment with respect
to all versions and adaptations of said work, and the Author further agrees to provide the Purchaser
with documents evidencing such conveyance, grant and assignment as to each such version and
adaptation, whenever request therefor is made by the Purchaser. If any changes in, revisions of, addi-
tions to or deletions from said work, including its title, have heretofore been made or may hereafter
be made for the purposes of publication, translation, dramatization or otherwise, or if any other
versions have heretofore been made or may hereafter be made (in any form whatsoever), whether
such changes, revisions, additions, deletions and other versions have originated with the Author or
others under a license from the Author, the Purchaser shall have the same rights in and to such
changes, revisions, additions, deletions and other versions as have been conveyed, granted and
assigned hereunder to the Purchaser in and to said work; it being understood and agreed that all
such changes, revisions, additions, deletions and other versions upon the creation thereof shall be
~~and constitute a part of said work.~~

(b)  SEE Paragraph SECOND (b) below:
~~(b)~~ (c)    That the Author will, prior to the expiration of any copyright or copyrights in said
work or any versions or adaptations thereof (as the same may be extended), renew or extend or
procure the renewal or extension of any such copyright or copyrights, and will convey, grant
and assign to the Purchaser the rights herein conveyed, granted and assigned for such renewal
or extended term. The Author hereby irrevocably appoints the Purchaser as the attorney-in-fact
of the Author to execute, deliver and record, on behalf of the Author and in the name of the
Author or otherwise, any and all documents necessary or proper to secure the renewal or extension
of any such copyright or copyrights and all rights therein and thereto for the term of such
renewal or extension, and to execute, deliver and record, on behalf of the Author and in the name of
the Author or otherwise, any and all assignments and other documents necessary or proper to
convey, grant and assign to the Purchaser the rights herein conveyed, granted and assigned, for the
term of such renewal or extension. The Author agrees that, in the event that the present Copy-
right Law of the United States of America, or of any other country where said work and such
versions or adaptations thereof are or may hereafter be protected by copyright, shall be amended
or changed or a new Copyright Law enacted, so that the term of copyright is extended or enlarged,
the Purchaser shall forthwith and automatically become entitled to all the rights herein conveyed,
granted and assigned to the Purchaser for such extended or enlarged term.

THIRD:    The term "Author", as used herein, shall include all the authors of said work named
herein, and all the terms, covenants, conditions and other provisions hereof shall be binding upon
all such authors, jointly and severally.

FOURTH:    This assignment is made and delivered pursuant to the terms, covenants, conditions
and other provisions contained in the agreement dated September 3, 1969 between
MARIO PUZO and PARAMOUNT PICTURES CORPORATION----------------------

and the rights conveyed, granted and assigned, and agreed to be conveyed, granted and assigned,
hereunder and under said agreement shall be binding upon and enure to the benefit of the parties
hereto, their respective heirs, executors, administrators, successors, assigns and licensees, and
the rights herein conveyed, granted and assigned, and agreed to be conveyed, granted and assigned,
may be freely assigned in whole or in part by the Purchaser, its successors, assigns and licensees.

SECOND  (a) :  That the conveyance, grant and assignment herein made
to the Purchaser in connection with said work shall also include
such a conveyance, grant and assignment with respect to all versions
and adaptations and publications of said work, and further agrees
to provide the Purchaser with documents evidencing such conveyance,
grant and assignment as to each such version, adaptation and
publication, whenever request therefor is made by the Purchaser.
The Author further agrees that he will not publish or permit the
publication of said work or any versions or adaptations thereof

2

unless the same shall be duly copyrighted in the United States
of America and duly registered for copyright in the Copyright
Office of the United States of America, and that, in all
publications of said work and any such versions and adaptations
thereof, all provisions of the Universal Copyright Convention
will be abided by and conformed to in all respects, and the
Author further agrees to notify the Purchaser, or to cause the
publisher of said work or any versions or adaptations thereof
to notify the Purchaser, whenever the Author or such publisher,
as the case may be, shall authorize the publication of said
work or any versions or adaptations thereof.

SECOND   (b):  That the conveyance, grant and assignment herein
made to the Purchaser in connection with said work shall also
include for advertising and exploitation purposes, the sole and
exclusive rights, forever and throughout the world, to make,
publish and copyright, or cause to be made, published and copy-
righted, in the name of the Purchaser or its nominee, serially
or otherwise, in any and all languages: synopses, scenarios,
and fictionized versions (each not exceeding seventy-five hundred
(7,500)words in length), with or without illustrations of any
type or kind whatsoever, of any motion picture photoplays made
pursuant to this agreement and based principally upon said work,
but with respect to any motion picture photoplays not based
principally upon said work there shall be no limitation in length;
and picture books, comic books, cartoon books and cartoon strips,
with or without literary matter, captions or dialogue, based upon,
adapted from or suggested by any motion picture photoplays made
pursuant to this agreement.

        IN WITNESS WHEREOF, the undersigned has executed this
agreement the   28 ᵗʰ   day of   November , 196 9 .

                                    _____
                                    MARIO PUZO

CAS/sg

                            3

STATE OF NEW YORK )
                        ) ss.:
COUNTY OF NEW YORK )

On this _28th_ day of _November_, 196_9_, before me personally came _Mario Puzo_ to me known, who being by me duly sworn, did depose and say that he resides at _Bay Shore, Long Island_ and that he is the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purpose therein contained.

_David I. Bursten_

DAVID I. BURSTEN
NOTARY PUBLIC, State of New York
No. 60-0512485
Qualified in Westchester County
Term Expires March 30, 1971

# EXHIBIT C

## **INTERIM SETTLEMENT AGREEMENT**

REDACTED

104141.1

Exhibit C       Page 12

REDACTED

104141.1

Exhibit C      Page 13

REDACTED

104141.1

Exhibit C      Page 14

Dated: March ____, 2012

PARAMOUNT PICTURES CORPORATION

By: _____

Its: _____

Dated: March 22, 2012

ANTHONY PUZO AS EXECUTOR OF THE ESTATE
OF MARIO PUZO

By: _Anthony Puzo, Executor_

*Approved as to form by:*

Dated: March ____, 2012

KENDALL BRILL & KLIEGER LLP

By: _____

Richard B. Kendall
Nicholas F. Daum
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067
Tel: (310) 556-2700
Fax: (310) 556-2705
E-mail: rkendall@kbkfirm.com

GAGE SPENCER & FLEMING LLP

By: _____

G. Robert Gage

104141.1

Exhibit C      Page 15

Dated: March _____, 2012

               PARAMOUNT PICTURES CORPORATION

               By: _____

                          KAREN MAGID

               Its: _____Executive Vice President_____

Dated: March 22 , 2012

               ANTHONY PUZO AS EXECUTOR OF THE ESTATE
               OF MARIO PUZO

               By: _____

               *Approved as to form by*:

Dated: March 27 , 2012

               KENDALL BRILL & KLIEGER LLP

               By: _____

               Richard B. Kendall
               Nicholas F. Daum
                10100 Santa Monica Boulevard, Suite 1725
               Los Angeles, California  90067
               Tel:  (310) 556-2700
               Fax: (310) 556-2705
               E-mail:  rkendall@kbkfirm.com

               GAGE SPENCER & FLEMING LLP

               By:  _____

               G. Robert Gage

104141.1

Exhibit C      Page 16

Dated: March _____, 2012

        PARAMOUNT PICTURES CORPORATION

        By: _____

        Its: _____

Dated: March _____, 2012

        ANTHONY PUZO AS EXECUTOR OF THE ESTATE
        OF MARIO PUZO

        By: _____

        *Approved as to form by*:

Dated: March _____, 2012

        KENDALL BRILL & KLIEGER LLP

        By: _____

        Richard B. Kendall
        Nicholas F. Daum
        10100 Santa Monica Boulevard, Suite 1725
        Los Angeles, California  90067
        Tel:  (310) 556-2700
        Fax: (310) 556-2705
        E-mail:  rkendall@kbkfirm.com

        GAGE SPENCER & FLEMING LLP

        By: _____

        G. Robert Gage

104141.1        Exhibit C   Page 17

410 Park Avenue, 9th Floor
New York, NY 10022
Tel: (212) 768-4900
Fax: (212) 768-3629
E-mail:  grgage@gagespencer.com

*Attorneys for Plaintiff Paramount Pictures Corporation*

Dated:  March **26**, 2012

GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP

By: _____

Bertram Fields
1900 Avenue of the Stars
21st Floor
Los Angeles, California 90067-4590
Tel:  (310) 553-3610
Fax:  (310) 553-0687
E-mail:  bfields@ggfirm.com

BOIES, SCHILLER & FLEXNER LLP

By: _____

Motty Shulman
333 Main Street
Armonk, New York 10504
Tel:  (914) 749-8200
Fax: (914) 749-8300
E-mail:  mshulman@bsfllp.com

*Attorneys for Defendant Anthony Puzo as Executor of the Estate of Mario Puzo*

104141.1

Exhibit C      Page 18

# EXHIBIT D

GANG, TYRE & BROWN

MEMO:

FROM:  BRUCE M. RAMER                          DATE  April 10, 1970

TO:    AL RUDDY                                RE:  ALFRAN PRODUCTIONS, INC.-
       c.c. Art Ryan                                "THE GODFATHER"--MARIO
            Ralph Kamon                              PUZO
            Wally Franson
            (w/enclosure)


          Dear Al:

               I am enclosing herewith a copy of my draft of the Alfran-
          Mario Puzo employment agreement.  Copies of this memorandum, and
          of its enclosure, are going concurrently to Art Ryan and Ralph
          Kamon.

               I know that Mr. Puzo is anxious to have this agreement
          as soon as possible, particularly since the first installment
          thereunder is due upon execution.  Therefore, would you please
          let me have any comments and suggestions you may have, and I am
          requesting that Ralph and Art immediately let me know whether they
          have any suggested changes or other comments.

               I would especially appreciate a close reading of the
          agreement because I found the memorandum somewhat unclear, and I
          would like assurances, particularly from Art Ryan, that the agreement
          conforms to the memorandum.

               The expense payments due Mr. Puzo need not await the
          execution of the agreement.  Those payments should, of course, be
          made by Alfran Productions, Inc. and I am therefore sending an
          additional copy of this memorandum, with a copy of its enclosure,
          to Wally Franson, so that he may arrange to implement it.

               Kindest personal regards.


                                        Bruce M. Ramer

          BMR/me
          Enclosure

          P.S.  Mr. Puzo's writing credit is per WGA.  See paragraph O of
          Schedule A.

                              B.M.R.

                                   RECEIVE
                                   APR 1   70
                                   RALPH K

AGREEMENT dated April 6, 1970 between Alfran Produc-
tions, Inc. (called "Employer") and Mario Puzo (called "Writer").

1.  Employer owns certain rights in the published
novel written by Writer entitled "The Godfather" (called "assigned
material").

2.  Employer employs Writer to write a final screenplay
(called "screenplay") based upon the assigned material and suitable
for the use intended as the basis of a feature length theatrical
motion picture (called the "Photoplay").  Writer accepts such
employment and agrees to commence rendering his services immedia-
tely and to deliver the first draft screenplay no later than
June 13, 1970.  The period between the date hereof and June 13,
1970 is "the first writing period;" the period between June 15
and July 4, 1970 is "the first consultation period;" the
period between July 6, 1970 and August 1, 1970 is "the
second writing period;" and the period between August 3, 1970
and August 8, 1970 is "the second consultation period."

3.  Writer grants Employer the irrevocable right
and option, exercisable only by written notice given to
Writer not later than six months after the end of the second
consultation period, to extend Writer's employment hereunder
for a period of two consecutive weeks (the "third writing
period") for the purpose of rewriting, revising and polishing
the final screenplay, incorporating changes in accordance
with Employer's instructions (the "final required changes").
If Employer exercises this option not later than the end of
the second consultation period, Writer will commence rendering
his services immediately thereupon and will deliver the

final screenplay incorporating the final required changes
(called "final revision") by the end of the third writing
period.  If Employer exercises the option after the end
of the second consultation period, the third writing period
will commence and Writer will begin rendering his services
immediately thereupon, subject to his reasonable availability;
if Writer is not immediately available, Employer and Writer
shall mutually agree upon a date when the third writing period
shall commence and therefore when Writer shall commence
rendering such services.  If no time period can be mutually
agreed upon within a reasonable time, the exercise by Employer
of the option shall be deemed rescinded.  Writer shall, of
course, use his best efforts to be available when required
and shall commence rendering such services as soon as he
is available.

    4.   The term of this Agreement shall commence on
the date hereof and continue (subject to Employer's rights
of termination, suspension and extension, hereinelsewhere
provided) until completion of all of Writer's services
which may be required hereunder.  Writer agrees to complete
and deliver each item of work within the applicable writing
period specified in this Agreement, as follows:  The first
draft screenplay by the end of the first writing period;
the final screenplay by the end of the second writing period,
incorporating changes in accordance with Employer's instruc-
tions ("the first required changes"); and if Employer exercises
the option granted in paragraph 3, Writer will deliver the
final revision by the end of the third writing period.

-2-

The first writing period shall commence on the date hereof; each subsequent writing period shall commence immediately following the end of the next preceding consultation period; each consultation period shall commence on the date immediately following delivery of the item of work required to be delivered during the preceding writing period; and each writing period and each consultation period shall continue until delivery of the item of work required to be delivered or until completion of all consultations to be made, as the case may be, in such applicable period, but in each case not longer than the periods of time specified herein, subject to the rights of termination, suspension and extension, hereinelsewhere provided.

5. Employer agrees to pay Writer and Writer agrees to accept, as full compensation for all services, the material, and all rights, options and warranties granted and to be granted and made hereunder:

A. For the first writing period, first consultation period, second writing period and second consultation period, $25,000, payable in the following installments:

(1) $8,333.33 on execution of this Agreement.

(2) $8,333.33 on delivery of the first draft screenplay.

(3) $8,333.34 on delivery of the final screenplay.

B. If the option granted Employer in paragraph 3 is exercised, for the third writing period, $15,000, payable

-3-

upon delivery of the final revision.

C.  If Writer is entitled under the Basic
Agreement to additional compensation for any uses of the
material, or of the Photoplay, Writer agrees to accept
as payment in full therefor the applicable minimum amount
specified in said Basic Agreement.

D.  Except as above specified, Writer is not
entitled to additional compensation for any use of the
material or of the Photoplay.  This shall not, of course,
limit paragraph 6.

6.  In addition to the compensation provided in
paragraph 5, Writer shall be entitled to receive the following:

A.  If Employer exercises the option granted
in paragraph 3 and Writer performs the services required
hereunder, Writer shall receive:

(1)  If no other writer is employed in
in connection with the Photoplay and
the Photoplay is based entirely on Writer's screen-
play:

a.  $10,000, upon commencement of
principal photography of Photoplay.

b.  $50,000 contingent and deferred,
payable only out of the first net
profits, if any, of the Photoplay, pari passu
with all other deferments; but

(2)  If another writer is employed in
connection with the Photoplay or if
the Photoplay is not based entirely on Writer's

-4-

screenplay: $25,000 contingent and deferred, payable only out of the first net profits, if any, of the Photoplay, pari passu with all other deferments; and in any event:

(3) 2-1/2% of 100% of the net profits, if any, of the Photoplay.

B. If Employer does not exercise the option granted in paragraph 3, and Writer performs the services required hereunder Writer shall receive 1-1/4% of 100% of the net profits, if any, of the Photoplay.

C. For the purposes of this paragraph, the term "net profits" shall be defined, computed, paid and accounted for in the same manner set forth in the production-financing-distribution agreement between Employer and Paramount Pictures Corporation.

7. At such times as Employer requires Writer to be away from New York City and its environs during the first writing period, second writing period and, if applicable, the third writing period and during the first consultation period and second consultation period, Writer shall receive weekly the sum of $500 (pro-rated for partial weeks on the basis of a seven-day week) as payment and reimbursement in full of all living and traveling expenses on a non-accountable basis. Air transporation, when required by Employer under this Agreement, shall be first-class and paid for or reimbursed by Employer.

8. This employment is subject to the Employer's Standard Terms contained in Schedule A, which is hereto annexed

-5-

and deemed incorporated herein by this reference.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

ALFRAN PRODUCTIONS, INC.


By_____
   Albert S. Ruddy, Its President

Address:
5451 Marathon Street
Los Angeles, California  90038

Copies to GANG, TYRE & BROWN
6400 Sunset Building
Hollywood, California  90026

                "Employer"



_____
Mario Puzo

Address:
c/o Robert Lantz
111 West 57 Street
New York, New York  10019

                "Writer"


-6-

<u>WRITER'S DEAL CONTRACT -- STANDARD TERMS</u>

A.   <u>DEFINITIONS</u>

<u>Agreement</u>:  The principal agreement to which these Standard Terms are attached, including without limitation these Standard Terms and all other attachments thereto.

<u>Basic Agreement</u>:  The currently applicable Writers Guild of America Theatrical Basic Agreement and, to the extent referred to therein, the currently applicable Television Film Basic Agreement, the latter being sometimes referred to as the TV Basic Agreement.

<u>Changes</u>:  Any and all manner of changes in any item of work, including but not limited to new material, revision of existing material, and polishing.

<u>Day</u>:  Any business day; excludes Sundays and legal holidays.

<u>Default</u>:  Any failure, refusal or neglect of Writer (other than because of incapacity) to perform Writer's required services or to observe Writer's other obligations hereunder, whether than existing or prospective, including any declaration by Writer or his agent of Writer's intention not to perform, or any failure by Writer to confirm his intention to perform within 24 hours after Writer has been apprised by Employer to confirm same.

<u>Delivery</u>:  Delivery of the respective items of work to Employer.  Delivery shall be deemed to occur two (2) days after Writer's manuscript has been received.

<u>Final Screenplay</u>:  This term is used in this agreement as the term "screen play" is defined in the Basic Agreement.

<u>First Draft Screenplay</u>:  This term is used in this agreement as defined in the Basic Agreement.

<u>SCHEDULE A</u>
(1)

<u>Force Majeure</u>:  Any accident, fire, explosion, earthquake, epidemic, act of God, or other casualty, any strike, lockout, labor condition, any shortage or unavailability of labor, materials, equipment, power or other commodity, any transportation failure or delay, the illness or death of, or breach by, any principal member of the cast or the producer or director theretofore employed for the Photoplay, any embargo, civil disturbance, riot, war or armed conflict (whether or not there has been an official declaration of war), any law, or any other cause of the nature of force majeure beyond the control of Employer, whether similar or dissimilar to any of the foregoing, which causes an interruption of, or materially hampers or interferes with, the normal conduct of Employer's business of preparing, producing and/or completing theatrical motion pictures or the business of any studio or production facility or other party with which Employer has contracted for the preparation or production of the Photoplay or any part thereof, or any event which legally excuses performance by Employer.

<u>Incapacity</u>:  Any illness or disability (physical or mental) which incapacitates Writer from fully performing Writer's required services; any inability of Writer to perform for any other reason which renders such inability excusable at law.  If Writer claims, or Employer has reasonable basis for believing, that Writer is incapacitated, Employer may, but at Employer's expense, have Writer examined by a physician of Employer's choice.

<u>Item of Work</u>:  Any of the various distinct portions of the material which Writer is employed to write, such as treatment, revised treatment, first draft screenplay, etc.

<u>Law</u>:  Any present or future statute or ordinance, whether municipal, county, state or federal; any executive, administrative, or judicial regulation, order, judgment or decree; any rule or principle of common law or equity.

<u>Material</u>:  Any and all of the various items of work which Writer is employed to write, such as treatment, first draft screenplay, etc., and all other results and proceeds of Writer's services, and each and all of the elements of the foregoing, including but not limited to:  titles, themes (literary and musical), formats, formulae, incidents, treatment, action, story, music, lyrics, arrangements (musical and otherwise), dialogue, ideas, plots, phrases, slogans, catch-words, art, designs, compositions, sketches, bits of business, effects, characters, characterizations, names and trade names.

<u>SCHEDULE A</u>
(2)

Party:  Any individual, partnership, corporation or other business organization, or government or governmental agency.

Photoplay:  A motion picture of any present or future kind, with or without sound, on film, tape, wire or any other substance, and produced or exhibited by or with any kind of device or equipment, including television, whether now known or hereafter discovered or invented.

Principal Agreement:  The covering agreement to which these Standard Terms are annexed as Schedule A, excluding these Standard Terms and any attachments thereto.

Run and Rerun:  These terms are used in this agreement as defined in the TV Basic Agreement.

Television Series:  A group of not less than 13 television programs produced for exhibition on a regularly recurring basis and having continuing characters, format, or other identifying features.

Termination for cause:  Termination of Writer's employment by reason of incapacity, force majeure or default.

Treatment:  This term is used in this agreement as defined in the Basic Agreement.

Work:  The material which Writer is employed to write, including all elements as defined in Exhibit I-A attached.

WGA:  Writers Guild of America, West, Inc.

B.   SERVICES OF WRITER

Writer agrees that throughout the term he will:  perform all of his services and comply with all of his other obligations under this agreement promptly, conscientiously and to the full limit of his ability, as, when and where required by Employer and in accordance with Employer's directions and instructions in all

SCHEDULE A
(3)

matters, including those involving literary and artistic taste and judgment; deliver to Employer, upon request, at any time and from time to time, any and all material delivered to Writer or written or rewritten by Writer prior to such request during the term hereof; consult, cooperate, collaborate or associate, with regard to the material, with any other writer or writers or other persons whom Employer may designate.

Writer will write and deliver each item of work during the designated writing period, making all changes requested of Writer during the preceding consultation period, as well as during such writing period. Should Writer fail for any reason whatsoever to complete and deliver any item of work within the time and in the manner herein specified, Employer may, at its election, either:

(1)    terminate this agreement for cause; or

(2)    specify a new date on or before which Writer shall complete and deliver such item of work to Employer, in which event the applicable writing period shall be extended to such date (and no compensation shall be payable for or with respect to the period of such extension) and the commencement of each subsequent writing period and consultation period shall be postponed and the term of this agreement extended accordingly.

Should Writer fail for any reason to complete and deliver such item of work on or before any such new date, Employer shall again have the same election as hereinabove provided, and may repeat such election either until Employer shall have elected to terminate this agreement, as aforesaid, or until Writer shall have completed and delivered such item of work to Employer.

C.    EXCLUSIVITY

During the term Writer will devote his entire time and attention exclusively to the performance of his obligations hereunder, and will not render services for himself or any other party except pursuant to this agreement.

SCHEDULE A
(A)

D.   GRANT OF RIGHTS

        Writer acknowledges that he is employed under this agreement as an employee of Employer to write the material.  In addition to Writer's services, Employer is accordingly entitled to and owns, absolutely and exclusively, and Writer hereby assigns to Employer, all rights of every kind and character in and to the material and the results and proceeds of Writer's services, and as between Writer and Employer, all other material used in the Photoplay or any television series or other usages derived there-from, including all rights throughout the world of production, manufacture, reproduction and recordation, by any art or method now known or hereafter devised, and whether such results and proceeds consist of literary, dramatic, musical, motion picture, mechanical or any other form of work, theme, idea, composition, creation or product; the specific enumeration elsewhere in this agreement of individual rights granted to Employer will never be construed as derogating from the foregoing absolute grant. Writer acknowledges that Writer does not have and will not claim or acquire, by the rendition of Writer's services hereunder or otherwise, any right, title or interest in the Photoplay or any television series or other usages derived therefrom, or in any of the property constituting any of the foregoing (including the material), or in any of the results and proceeds of Writer's services hereunder, and that Writer will not during the term or thereafter without Employer's written consent, use or purport to authorize others, other than Employer, to use any of the foregoing.

        Writer specifically agrees that Employer may make such changes in, deletions from, or additions to, Writer's material, as Employer in its sole discretion may consider necessary or desirable for Employer's own purposes, and Writer expressly waives any so-called "moral rights."  Writer further acknowledges that Employer may use and reuse, and license others to use and reuse, any or all of the material or any embodiment thereof or based thereon, in whole or in part, without limit, or refrain therefrom, as Employer elects, throughout the world forever, without any obligation for additional payment to Writer of any kind whatso-ever, except to the extent specifically required under the Basic Agreement or the principal agreement.

SCHEDULE A
(5)

Upon request, from time to time, Writer agrees to execute and deliver to Employer, with respect to any items of work, whether completed or not, instruments in the forms of Exhibits 1-A and 1-B attached hereto and by this reference incorporated herein, but all of the rights, privileges, representations and warranties granted and/or made in said exhibits, are vested in Employer forthwith upon creation of the material whether or not Writer executes the same.

E.   WARRANTIES

The warranties and indemnities made by Writer in Exhibit 1-B attached continue in perpetuity; they apply only to the material supplied by Writer.  Employer agrees similarly to indemnify and hold Writer harmless as to the assigned material or other elements supplied by Employer for incorporation into Writer's material or the Photoplay.  Writer and Employer further agree that upon the presentation of any claim or the institution of any action involving a breach of warranty, the party receiving notice thereof will promptly notify the other party in regard thereto.

The warranties and indemnities set forth in Exhibit 1-B are subject to the following additional limitations:

(a)   in no event shall such warranty or indemnity apply with respect to any claim that the material furnished by Writer invaded the privacy of any person unless Writer knowingly used the name or personality of such person, or should have known, in the exercise of reasonable prudence, that such person would or might claim that his personality was used in such material; and

(b)   nothing herein shall be deemed to constitute a waiver by Writer of Writer's right to defend himself against a claim by Employer for costs, damages or losses arising out of settlements between Employer and any third party not consented to by Writer; but Employer reserves all of the rights Employer might otherwise have against Writer.

SCHEDULE A

(6)

F.   WRITER'S NAME AND LIKENESS

Writer hereby grants to Employer and the licensees and assigns of Employer, the perpetual right to use Writer's name, voice and likeness, and biographical material concerning Writer (all included within the words "name and likeness"), to advertise and promote the material and the Photoplay and any television or other usage of the material or the Photoplay or any other exercise of any rights granted Employer hereunder (including, in connection therewith, any sponsor of any of the foregoing and the products and services of any such sponsor), but not in such manner as to constitute a direct endorsement by Writer of any product or service.

Employer shall have the exclusive right to issue publicity concerning the Photoplay and Writer's employment hereunder, and Writer agrees not to engage any publicity representative nor issue or permit the issuance of any publicity concerning the foregoing matters, except by Employer as aforesaid.

G.   WRITER'S CONDUCT

Writer represents and warrants that he has, prior to the term, conducted himself, and agrees that he will, during the term and thereafter, conduct himself, with due regard to social conventions and/or decency.  If Writer should commit any act or become involved in any situation or occurrence which would be an offense involving moral turpitude under federal, state or local law, or which tends to degrade Writer in society or to bring him into public disrepute, contempt, scandal or ridicule, or to shock, insult or offend the community or reflect unfavorably upon Writer or Employer or any exhibitor or distributor of the Photoplay or any network or station broadcasting the Photoplay or any television series or other usage derived from the material or the Photoplay, or any sponsor thereof, or its advertising agency, or the entertainment industry in general, or to injure the success of any use of the Photoplay or any television series or other usage derived from the material or the Photoplay, or if Writer has so conducted himself and publicity is given to any such conduct, commission or involvement on Writer's part, without limiting any other remedies which Employer may have, Employer may suspend Writer's employment and compensation for a period not exceeding 30 days after Employer acquires knowledge of such conduct, commission or involvement, and/or Employer may, by notice in writing to Writer, terminate Writer's employment hereunder, and/or Employer may omit or delete the credit, if any, otherwise required to be given to Writer pursuant to this agreement, the Basic Agreement, or otherwise.

SCHEDULE A