# EXHIBIT A

February 14, 1967

Paramount Pictures Corporation
1501 Broadway
New York, New York

Gentlemen:

This will confirm our understanding and agreement as follows:

1.   For and in consideration of the sum of SEVEN THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($7,500.00) paid by you to the undersigned*upon the execution hereof, receipt whereof is hereby acknowledged, I hereby grant to you the sole and exclusive irrevocable option to purchase all rights excluding book publication rights (as more fully set forth in the form of agreement marked Exhibit A, and in the form of assignment marked Exhibit B, which are annexed hereto and made a part hereof) in, to and in connection with a certain novel entitled MAFIA (hereinafter called said "novel").

2.   The period during which the option set forth in paragraph 1 above may be exercised shall commence on the date hereof and shall terminate on the date which is six (6) months after the United States publication of the hard cover trade edition of the novel.

3.   The parties hereto acknowledge their understanding to each other that the novel is presently in the process of being written by the undersigned, and the undersigned hereby agrees to deliver to you the manuscript of the novel in its final form prior to the date which is one (1) year from the date of the execution of this option.  The undersigned hereby agrees to so proceed diligently and expeditiously with the writing of the novel and to use its best talents and abilities with respect thereto so as to be able to satisfy the one (1) year delivery obligation expressed herein.  During such period we agree to consult with each other with respect to such writing at such times and to such extent as each party hereto may deem it appropriate under the circumstances.  The completed manuscript shall be delivered in at least duplicate at your offices at 5451 Marathon Street, Hollywood, California 90038 and at 1501 Broadway, New York, New York 10036, in each such case to the attention of the head of the story department.  No submission or purported delivery to you of the novel shall be deemed an actual delivery hereunder unless and until the novel


EXHIBIT A
PAGE 1

*(In accordance with and in the manner provided in paragraph 7(a) hereof)

shall fully comply with the provisions hereof and the date of such delivery to you shall be the later of the actual delivery dates to California or New York, whichever the case may be. Upon final delivery of the manuscript to you as provided hereunder you hereby agree to pay to the undersigned the further sum of FIVE THOUSAND and 00/100 DOLLARS ($5,000.00).

4. Should you exercise the option within the period, all as hereinabove provided, then the novel and all rights in, to and in connection with the novel, excluding book publication rights, shall forthwith be and become your sole and exclusive property. Exercise of the option shall be by notice in accordance with the notice provision hereinbelow provided. Promptly after the exercise of said option, you and the undersigned hereby agree to execute, acknowledge and deliver to each other counterparts of an agreement in the form of the annexed Exhibit A, and I hereby agree to execute, acknowledge and deliver to you an assignment in the form of the annexed Exhibit B, both of which shall evidence the transfer and assignment to you of the novel and all rights in, to and in connection with the novel, excluding book publication rights. No failure, however, to execute said agreement or said assignment shall deprive you of any of the rights acquired by you by reason of your exercise of said option. If you so exercise the option, in addition to the foregoing, I agree to furnish you with copies of any and all notes, reports, memoranda, paraphernalia and any and all other writings which I may have pertaining to the subject of said novel contemporaneous with the delivery of executed copies of Exhibits A and B.

5. If you elect to exercise the option as hereinabove set forth in detail in paragraph 4, and in the manner therein provided, upon my execution, acknowledgement and delivery of the agreements in the form of the annexed Exhibits A and B, and my delivery of the additional materials set forth in paragraph 4, you agree to pay me the sum of FIFTY THOUSAND and 00/100 DOLLARS ($50,000.00) less the sum of SEVEN THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($7,500.00) paid to me upon execution hereof as provided in paragraph 1 above and less the sum of FIVE THOUSAND and 00/100 DOLLARS ($5,000.00) to be paid to me upon delivery of the novel as provided in paragraph 3 above (to wit: the sum of THIRTY SEVEN THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($37,500.00)). In addition to the foregoing payment to me, and following such exercise of the option, you agree to pay me the following additional sums:

(i) The sum of FIVE THOUSAND and 00/100 DOLLARS ($5,000.00) if the novel is adopted by any one of the following: Book-Of-The-Month-Club, Literary Guild Book Club or The Reader's Digest, as the single monthly choice (but not dual or bonus choice).

(ii) The sum of TWENTY-FIVE CENTS ($.25) per copy for each copy of the regular hard cover trade edition sold by the publisher of the novel in the United States and Canada but only during the first three (3) years after first publication, in excess of 50,000 copies and only for the next 100,000 copies, provided, however, it is agreed that the foregoing payment


EXHIBIT A
PAGE 2

computation shall be made only with respect to sales of the trade edition with respect to which the undersigned is entitled to receive or be credited with royalties, and further provided, that in no event shall the undersigned be entitled to receive under this subparagraph (ii) any sums in excess of TWENTY-FIVE THOUSAND and 00/100 DOLLARS ($25,000.00).

Notwithstanding anything to the contrary contained in this paragraph 5 relating to payments to the undersigned, you agree that the total amount of such payments to be remitted to the undersigned in any one calendar year shall not exceed TWENTY-FIVE THOUSAND and 00/100 DOLLARS ($25,000.00). Any balance due the undersigned shall be accumulated by you and paid on the 15th day of January of each succeeding year until such January 15th date is reached when all of such balance has been remitted to the undersigned. All sums accumulated hereunder shall be paid without interest and shall not be deemed to have been held in trust by you.

6(a). If for any reason whatsoever the undersigned shall fail or be unable due to disability or otherwise to deliver the manuscript of the novel within the time period expressed above, then you shall have the right to elect one of the following: (1) to terminate this option agreement and in such event the undersigned shall repay to you the SEVEN THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($7,500.00) paid on execution hereof; or, (2) to extend the time for the undersigned to complete the writing of the novel, and in such event provisions of this option agreement shall remain effective and be accordingly modified during such extended period of time; or, (3) to purchase the rights as provided under this option agreement in, to and in connection with the work and all materials heretofore delivered to you for the total purchase price of SEVEN THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($7,500.00), which sum was paid on execution of this option agreement and without any obligation by you to pay to the undersigned any additional sums as hereinabove provided in paragraph 3 and 5. If you so elect to purchase such rights as provided in this paragraph 6(a) then the provisions of paragraph 4 hereof shall be binding and effective upon the undersigned.

(b). Should you not exercise the option within the period provided in paragraph 2 hereof, as same may be extended, then this option agreement shall be deemed fully terminated (except as specifically provided to the contrary with respect to survival of warranties and representations) and neither you nor the undersigned shall have any further obligation to the other and I shall be entitled to retain the said sum of SEVEN THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($7,500.00) and, if the manuscript of the novel was delivered to you, the sum of FIVE THOUSAND and 00/100 DOLLARS ($5,000.00).

7(a). With respect to all payments made to the undersigned under this option agreement or under the agreement to be executed by the parties hereto in the form of Exhibit A annexed hereto, I agree that Paramount shall have a reasonable period of time to process and deliver each of same when due. Other than the payment to me upon the execution hereof as hereinabove pro-



vided in paragraph 1, I hereby authorize and direct you to pay all monies due me as set forth in this option agreement to my New York agent, William Morris Agency, Inc., 1350 Avenue of the Americas, New York, New York, ~~————————————————~~ ~~————————————————~~, and all such payment by you to any such agent shall be deemed to be and shall be full, complete and satisfactory payment to the undersigned.

(b).  Notice of your exercise of the option hereunder shall be in writing and shall be addressed to the undersigned in care of William Morris Agency, Inc., 1350 Avenue of the Americas, New York, New York, and any notices to you hereunder shall be addressed to you, in duplicate, at your offices at 5451 Marathon Street, Hollywood, California 90038 and 1501 Broadway, New York, New York 10036 to the attention of the Legal Department, or to such other address as you or the undersigned may hereafter designate in writing, and shall be sufficiently given by personal delivery thereof as hereinabove specified, or by telegraphing or mailing the same in a post-paid wrapper addressed to the appropriate party as aforesaid and the date of such personal delivery, deposit in the mail or telegraphing, as the case may be, shall be deemed to be the date of the exercise of the option or the giving of such notice, whichever the case may be.

8(a).  The undersigned hereby represents and warrants that:

(i)  I am the sole author of said novel, which has never to date been published or registered for copyright or performed publicly in any way whatsoever in any form, is wholly original with me and has not been copied in whole or in part from any other work, and does not infringe upon any rights whatsoever of any party throughout the world.

(ii)  No claim has been made against the undersigned, and I know of no claim that said novel infringes the copyright or violates the right of first publication or any other right in any work or of any person, firm or corporation whatsoever, throughout the world.

(iii)·  I am the sole owner and exclusive proprietor throughout the world of said novel and of all rights therein and thereto and there is not now valid or outstanding any right, title or interest in, to or in connection with said treatment throughout the world.  The provisions of this subparagraph (iii) is subject to certain customary book publishing contracts consistent with the provisions of this agreement which may have been executed as of the date hereof.

(iv)  Unless and until you shall finally elect not to exercise the option during the period provided in paragraph 2 hereof, I shall remain the sole and exclusive owner and proprietor of said novel, excluding possible book publication rights, throughout the world, in and to said novel and of all rights therein and thereto, and during such option period, said novel shall be otherwise free and clear of all claims, demands, liens and encumbrances of any nature whatsoever.



8(b).  It is expressly understood and agreed to by the undersigned that you are entering into this option agreement and paying the above consideration, and if the option is exercised hereunder, entering into the form of agreement annexed hereto as Exhibits A and B, in reliance upon and on the basis of the statements, representations, warranties and agreements made by the undersigned herein to you, and I hereby agree that in each such case the statements, representations, warranties and agreements shall remain in full force and effect and shall survive the execution and delivery of this option agreements and the agreement in the form of Exhibits A and B annexed hereto.

9.  Notwithstanding the provisions of paragraphs THIRD (substituted) and FOURTEENTH of Exhibit A, but not in limitation thereof, the undersigned hereby agrees that the first publication and sale of the novel in hard cover, paperback form or serialization shall be duly copyrighted in the name of the undersigned, in the United States of America with a simultaneous publication in a country party to the Berne Convention, and all prerequisites and formalities associated with such copyright, including without limitation, notice, registration and deposit complied with, as appropriate.  In addition, in all such publications of the novel, all provisions of the Universal Copyright Convention will be abided by and conformed to in all respects. Promptly after all copyright prerequisites and formalities are complied with in connection with any such publication, the undersigned agrees to execute and deliver to you an assignment of copyright in, to and in connection with the publication of the novel in book form, paperback form or by serialization, as the case may be, including any and all renewal or extended terms of copyright, and of all other rights and interests in and to such publication, excluding only the book publication rights in connection therewith.  The undersigned specifically agrees to mention and reserve all the rights granted to you under this option agreement or the agreement in the form of Exhibit A attached hereto in any and all publication agreements with licensees or assignees, as you may request or require, and the undersigned agrees that I will not publish or permit the publication of the novel in any form in any part of the world without first complying with the obligations of this paragraph 9.  The undersigned agrees to execute all further documents which you may request or require to protect and defend the rights herein granted, and to prevent all infringements of copyright, and upon the undersigned's failure to do so, the undersigned hereby appoints you as its attorney-in-fact to take all such steps, including litigation, and execute all such documents, in the name of the undersigned or in the name of the undersigned and you jointly, as appropriate.  All damages, penalties, settlements and profits relating to or arising from any interference with the rights herein granted, past, present and future are hereby assigned to you in its entirety.  The undersigned agrees to notify you, or cause the publisher of the novel to notify you, whenever the undersigned or such publisher, as the case may be, shall authorize any such publication of the novel, and after any such publication, the undersigned agrees to deliver to you free of charge six (6) copies of each such published work for your use.  All royalties derived from the publication of such novel shall belong to the undersigned and you shall not participate in same in any way.


EXHIBIT A
PAGE 5

10(a).   Neither party hereto is the representative, agent, partner, trustee or trustees, beneficiary of the other party hereto, and neither party shall so hold itself out, by advertising or otherwise.  I warrant and represent that no broker's fee, finder's fee, agency or commission is payable by you by reason of this option agreement or by reason of the form of agreements to be executed by us annexed hereto as Exhibits A and B, or anything covered hereby or thereby, and that any such sums, if payable shall be paid in full by me out of the proceeds remitted or to be remitted to me by you under this agreement or under the agreements in the form of Exhibits A and B annexed hereto.

(b).   No term, condition or provision of this option agreement is intended to or shall inure to the benefit of any third party, or give rise to any right or cause of action in favor of any such third party against or with respect to either of the parties hereto, except as hereinafter provided in sub-paragraph (e) hereof.

(c).   This option agreement constitutes the entire and complete understanding and agreement between the parties hereto and no representations, undertakings, agreements or warranties of any kind or nature have been made by either party to the other party hereto to induce the making of this option agreement, except as expressly set forth herein, and each of the parties hereto agrees not to assert to the contrary.

(d).   This option agreement cannot be changed, modified or discharged, in whole or in part, except by an instrument in writing signed by the party against whom endorsement of any such change, modification or discharge is sought.

(e).   This option agreement, and all of its terms and provisions and all rights therein and thereunder, shall inure to the benefit of, and shall be binding upon, the parties hereto and their respective parent, subsidiaries and affiliates, successors, heirs, executors, administrators and assigns, whichever the case may be, and to any corporation which Paramount its parent, subsidiaries or affiliates, may be merged into or consolidated with, or to any corporation which by acquisition may acquire Paramount or any such parent, successor or affiliate.

(f).   This option agreement in all respects, including matters of its validity and construction shall be governed by the laws and judicial decisions of the State of New York.

13.   Upon your exercise of the option hereinabove set forth, you agree to furnish the undersigned with final copies of the agreements annexed hereto as Exhibits A and B and to include therein the appropriate provisions of this option agreement applicable to such agreement and you shall also have the right to make any and all deletions, modifications or corrections in such agreements in order to properly reflect the understandings of the parties hereto as expressed in this option agreement. In any event, however, with respect to any and all interpretations of the understandings and agreements of the parties hereto, the



EXHIBIT A
PAGE 6

terms and provisions of this option agreement and the terms
and provisions of the form of agreement attached hereto as
Exhibit A shall be read together, and construed and inter-
preted together, notwithstanding the fact that each of the
respective agreements separately may not include all of the
combined terms and provisions of the two (2) agreements.

14.  If the foregoing correctly sets forth our under-
standing and agreement, please signify your acceptance at
the place indicated below.

IN WITNESS WHEREOF, you and the undersigned have
caused this option agreement to be signed and sealed as of
the day and year first above written.

Very truly yours,

MARIO PUZO

ACCEPTED AND AGREED TO:

PARAMOUNT PICTURES CORPORATION

BY: _____

Title: _Ass't. Sec'y._

EXHIBIT A
PAGE ___

STATE OF NEW YORK    )
                             )    ss.:
COUNTY OF NEW YORK  )

On this _20th_ day of _February_, 196_7_ before me personally came _Mario Puzo_ to me known, who being by me duly sworn, did depose and say that he resides at _2833 Covered Bridge Road, Merrick, Long Island_, and that he is the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purpose therein contained.

_David I. Bursten_

DAVID I. BURSTEN
Notary Public, State of New York
No. 60-0512485
Qualified in Westchester County
Term Expires March 30, 1967


EXHIBIT A
PAGE 8

STATE OF NEW YORK   )
                    )   ss.:
COUNTY OF NEW YORK  )

On this _24th_ day of _February_, 196_7_ before me personally came _Norman Lucker_ to me known, who being by me duly sworn, did depose and say that he resides at _119-23 20th Avenue, Whitestone N.Y._ that he is an ASSISTANT SECRETARY of PARAMOUNT PICTURES CORPORATION, the corporation described in and which executed the foregoing instrument; that he knows the corporate seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation and that he signed his name hereto by like order.

STUART M. KAHAN
NOTARY PUBLIC, State of New York
No. 41-2015550 - Queens County
Term Expires March 30, 1967


EXHIBIT A
PAGE 9

AR 3-15-62

AGREEMENT made this          day of                    , 19   , between

MARIO PUZO————————————————————————————————————————————————
hereinafter called the AUTHOR, and

PARAMOUNT PICTURES CORPORATION————————————————————————————
hereinafter called the PURCHASER.

FIRST:          The Author hereby warrants:

(a)   That the Author is the sole author of a certain  novel————————
entitled  MAFIA—————————————————————————————————————————————
(hereinafter called "said work"), which work is wholly original with the Author and has not been
copied in whole or in part from any other work, and that neither said work nor any version or
adaptation thereof has ever been published anywhere throughout the world, except as hereinafter
mentioned.

(b)   That the Author is the sole owner of all rights hereinafter conveyed,
granted and assigned to the Purchaser and that there is not now valid or outstanding any right,
title or interest in or to or in connection with said work adverse to or inconsistent with the rights
hereinafter conveyed, granted and assigned to the Purchaser, or by which any of said rights or the
enjoyment thereof by the Purchaser, might be invalidated, impeded or impaired.

(c)   That no claim has been made against the Author, and that the Author
knows of no claim, that said work infringes the copyright or violates the right of first publication
or any other rights in any other work and/or of any person, firm or corporation whatsoever.

(d) That said work was first published with due and
proper notice of copyright in the name of _____
in the United States of America by _____
as a book on _____, 19_____ and, as so published
and copyrighted, was registered for copyright in the United States
Copyright Office in the name of _____
on _____, 19_____ under Entry Number_____.

EXHIBIT "A"



AR 5-1-64

SECOND:       The Author hereby conveys, grants and assigns to the Purchaser said work and the manuscripts thereof, together with any and all copyrights therein and all rights now known or hereafter accruing therein and thereto, forever and throughout the world; together with the sole and exclusive right to use said work, in whole or in part, in whatever manner the Purchaser may desire, including, but not limited to, the sole and exclusive rights:  to make and cause to be made literary and dramatic and other versions and adaptations of every kind and character of said work or any part or parts thereof and/or any or all of the characters created therein; to produce, perform and represent said work and/or any versions or adaptations thereof, or any part or parts thereof, in any manner or form the Purchaser may desire; to adapt, arrange, change, interpolate in, transpose, add to and subtract from said work to such extent as the Purchaser, in its sole discretion, may desire in connection with any use which the Purchaser may make of said work; to translate said work and/or any versions or adaptations thereof or any part or parts thereof into any and all languages; to use the titles of said work, or any simulations thereof or any other titles which the Purchaser may select, in connection with any uses of said work or any versions or adaptations thereof or any part or parts thereof; to use any or all of the characters created therein and said titles or any simulations thereof in connection with any other works, whether or not the same are based upon or adapted from said work or any part or parts thereof; to combine said work and any part or parts thereof with any other works for any purpose which the Purchaser may desire; to record, reproduce and transmit sound, including spoken words, dialogue, music and/or songs, whether extracted from said work or otherwise, and to change such spoken words, dialogue, music and/or songs, if extracted from said work, and/or to interpolate other spoken words, dialogue, music and/or songs, in or in connection with or as part of the production, reproduction, transmission, exhibition and/or representation of any versions or adaptations which the Purchaser may make of said work, and to make, use, license and vend any and all records or other devices required or desired for any of the aforesaid purposes; ~~to publish said work and/or any versions or adaptations thereof, or any part or parts thereof, and to vend copies thereof;~~ to broadcast by radio broadcasting said work and/or any versions or adaptations and/or any part or parts thereof; to transmit said work and/or any versions or adaptations thereof or any part or parts thereof by television or any other process now known or hereafter to be devised; to copyright, vend and license said work and any such versions or adaptations or any part or parts thereof throughout the world.

SEE PARAGRAPH THIRD SUBSTI-TUTED

THIRD:       ~~The Author agrees that the conveyance, grant and assignment herein made~~ to the Purchaser in connection with said work shall also include such a conveyance, ~~grant and~~ assignment with respect to all versions and adaptations of said work, and the ~~Author~~ further agrees to provide the Purchaser with documents evidencing such ~~conveyance,~~ grant and assignment as to each such version and adaptation, whenever ~~request~~ therefor is made by the Purchaser. If any changes in, revisions of, additions to or deletions from said work, including its title, have heretofore been made or ~~may~~ hereafter be made for the purposes of publication, translation, dramatization ~~or otherwise,~~ or if any other versions have heretofore been made or may hereafter ~~be made~~ (in any form whatsoever), whether such changes, revisions, additions, deletions and ~~other~~ versions have originated with the Author or others under a license from the Author, the Purchaser shall have the same rights in and to such changes, revisions, additions, ~~deletions~~ and other versions as have been conveyed, granted and assigned hereunder ~~to the~~ Purchaser in and to said work; it being understood and agreed that all such ~~changes,~~ revisions, additions, deletions and other versions upon the creation thereof shall be and ~~constitute a part of said work.~~

FOURTH:       The Author agrees that the Author will, prior to the expiration of any copyright or copyrights in said work or any versions or adaptations thereof (as the same may be extended), renew or extend or procure the renewal or extension of any such copyright or copyrights, and will convey, grant and assign to the Purchaser such renewal or extension of copyright and the rights herein conveyed, granted and assigned for such renewal or extended term. The Author hereby irrevocably appoints the Purchaser as the attorney-in-fact of the Author to execute, deliver and record, on behalf of the Author and in the name of the Author or otherwise, any and all documents necessary or proper to secure the renewal or extension of any such copyright or copyrights and all

2



AR 9-30-64

rights therein and thereto for the term of such renewal or extension, and to execute, deliver and record, on behalf of the Author and in the name of the Author or otherwise, any and all assignments and other documents necessary or proper to convey, grant and assign to the Purchaser such renewal or extension of copyright and the rights herein conveyed, granted and assigned, for the term of such renewal or extension. The Author agrees that, in the event that the present Copyright Law of the United States of America, or of any other country where said work and such versions or adaptations thereof are or may hereafter be protected by copyright, shall be amended or changed or a new Copyright Law enacted, so that the term of copyright is extended or enlarged, the Purchaser shall forthwith and automatically become entitled to such renewal or extension of copyright and all the rights herein conveyed, granted and assigned to the Purchaser.

FIFTH:        The Author agrees to execute and deliver to the Purchaser and to provide the Purchaser with any and all further documents necessary or proper to evidence or secure to the Purchaser the copyright and the rights herein conveyed, granted and assigned to the Purchaser and to perfect the record thereof.

SIXTH:        The Author further agrees to indemnify and save harmless the Purchaser, its successors and assigns and its and their licensees, against all damages, losses, settlements, judgments, expenses and costs, including reasonable counsel fees, suffered, made, incurred or assumed by the Purchaser or its successors or assigns or its or their licensees, in its or their discretion and without obtaining any consent in connection therewith, growing out of or by reason of any breach of any warranty, undertaking, representation, agreement or certification made or entered into herein or hereunder by the Author.

SEVENTH:        (a)   The Author hereby grants to the Purchaser the right to use, and to license, cause or permit others to use, the name of the Author in connection with any use, version or adaptation which the Purchaser may make of said work or any version or adaptation thereof and in connection with the advertising or publicity thereof, whether or not the same shall be substantially based upon said work or any such version or adaptation thereof. The Author agrees that, except as provided in Subdivision (b) of this Paragraph SEVENTH, the Purchaser shall not be required to announce the name of the Author in or in connection with any such use, version or adaptation, or in connection with any advertising or publicity issued by the Purchaser in connection with any such use, version or adaptation, whether or not the Purchaser shall elect to announce in or in connection with any such use, version or adaptation or such advertising or publicity thereof the name or names of the author or authors of the screenplay or other version or adaptation thereof.

(b)   The Purchaser agrees, however, to announce on the film of any motion picture photoplay that may be produced by it hereunder and substantially based upon or adapted from said work or any version or adaptation thereof, substantially incorporating the plot, theme, characterizations, motive and treatment of said work or any version or adaptation thereof, that said motion picture photoplay is based upon or adapted from or suggested by a work written by the Author, or words to that effect, and, if the Purchaser shall so elect, upon such other material as may be incorporated in any such motion picture photoplay, with or without the names of the authors of such other material.

~~(c)   The Author hereby acknowledges that the Author's pseudonym is~~

and the Author hereby grants to the Purchaser the right also to use the Author's pseudonym in connection ~~with said work~~. The Purchaser agrees that the Author's pseudonym shall be used in ~~any announcements of the Author's name pursuant to Subdivision (b) of this Paragraph SEVENTH.~~

(d)   No casual or inadvertent failure to comply with any of the provisions of this paragraph SEVENTH shall be deemed a breach of this agreement by the Purchaser.

3


EXHIBIT A
PAGE 12

[xerox]       [xerox]

AR 6-1-61

EIGHTH:            Nothing contained in this agreement shall be construed to be or operate in derogation of or prejudicial to any rights, licenses, privileges or property which the Purchaser may enjoy or to which the Purchaser may be entitled as a member of the public even if this agreement were not in existence, and the Purchaser may exercise such rights, licenses, privileges and property which the Purchaser may enjoy or to which the Purchaser may be entitled as a member of the public as though this agreement were not in existence. The rights granted in this agreement by the Author to the Purchaser and the representations, warranties, undertakings and agreements made in this agreement by the Author shall endure in perpetuity and shall be in addition to any rights, licenses, privileges and property of the Purchaser referred to in the first sentence of this Paragraph EIGHTH.

NINTH:            In full consideration for the rights herein conveyed, granted and assigned and agreed to be conveyed, granted and assigned and the representations, warranties, undertakings and agreements made in this agreement by the Author, the Purchaser hereby agrees to pay

to William Morris Agency, Inc., 1350 Avenue of the Americas, New York, New York, as agent for the Author, and the Author hereby authorizes the Purchaser to pay to said agent, whose receipt shall be binding upon the Author, upon the execution and delivery hereof, in lawful money of the United States of America, the sum of FIFTY THOUSAND and 00/100 DOLLARS ($50,000.00) less the sum of SEVEN THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($7,500.00) paid to me upon execution of the option agreement and less the sum of FIVE THOUSAND and 00/100 DOLLARS ($5,000.00) paid to me upon delivery of the novel (to wit:  the sum of THIRTY SEVEN THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($37,500.00)).  In addition, you agree to pay my agent as above the additional sums as follows:   (i) The sum of FIVE THOUSAND and 00/100 DOLLARS ($5,000.00) if the novel is adopted by any one of the following:  Book-Of-The-Month-Club, Literary Guild Book Club or The Reader's Digest; (ii) The sum of TWENTY-FIVE CENTS ($.25) per copy for each copy of the regular hard cover trade edition sold by the publisher of the novel in the United States and Canada but only during the first three (3) years after first publication, in excess of 50,000 copies and only for the next 100,000 copies, provided, however, it is agreed that the foregoing payment computation shall be made only with respect to sales of the trade edition with respect to which the undersigned is entitled to receive or be*

TENTH:            With respect to each payment to be made by the Purchaser pursuant to this agreement, it is expressly understood and agreed that should the Purchaser for any reason whatever fail to make such payment as hereinabove provided, the Purchaser shall not be deemed in default hereunder unless and until, following such failure, the Author shall have given the Purchaser written notice demanding such payment and the Purchaser shall have failed to make such payment within one (1) week after the Purchaser's receipt of said notice. In any event, the Purchaser's liability for any such default and the Author's rights and remedies therefor shall be limited to the payment of money only, not exceeding the amount of any payment provided for in this agreement, and in no event shall any of the rights acquired or to be acquired by the Purchaser hereunder be affected or impaired.

ELEVENTH:            Any notice or matter required or desired to be given or submitted hereunder shall be in writing and shall be addressed to the Purchaser, one copy at 1501 Broadway, New York,

4


EXHIBIT A
PAGE 13

\* credited with royalties, and further provided, that in no event shall the undersigned be entitled to receive under this subparagraph (ii) any sums in excess of TWENTY-FIVE THOUSAND and 00/100 DOLLARS ($25,000.00).

Notwithstanding anything to the contrary contained in this Paragraph 9 relating to payments to the undersigned, you agree that the total amount of such payments to be remitted to the undersigned in any one calendar year shall not exceed TWENTY-FIVE THOUSAND and 00/100 DOLLARS ($25,000.00). Any balance due the undersigned shall be accumulated by you and paid on the 15th day of January of each succeeding year until such January 15th date is reached when all of such balance has been remitted to the undersigned. All sums accumulated hereunder shall be paid without interest and shall not be deemed to have been held in trust by you. - - - - - - - - - - - - - - - -

EXHIBIT
PAGE 14

AR 5-1-64

New York 10036, and one copy at 5451 Marathon Street, Hollywood, California 90038, and shall be addressed to the Author c/o William Morris Agency, 1350 Avenue of the Americas, New York, New York ———————————————————————————————, or to such other addresses as the parties hereto may hereafter designate in writing, and shall be sufficiently given or submitted by personal delivery thereof to the other party at the aforesaid addresses, or by telegraphing or by mailing the same in a postpaid wrapper addressed to the other party as aforesaid, and the date of such delivery, telegraphing or mailing shall be the date of the giving of such notice. In the event that the last day on which the parties hereto are empowered to give notice pursuant to any provisions of this agreement, or to perform any other act which the parties are required or may desire to perform under or in connection with this agreement, should fall on a Saturday, Sunday or holiday, then, in that event, the parties shall have until the end of the first full business day following said Saturday, Sunday or holiday within which to give such notice or to perform such act. It is further agreed that, if any date established by any notice for the commencement of any period or the performance of any other act shall fall on a Saturday, Sunday or holiday, then such commencement date for such period or such date for the performance of any such act shall be extended until the close of the first full business day following said Saturday, Sunday or holiday.

TWELFTH:        The term "Author", as used herein, shall include all the authors of said work named herein, and all the terms, covenants, conditions and other provisions hereof shall be binding upon all such authors, jointly and severally.

THIRTEENTH:    This agreement shall bind and enure to the benefit of the parties hereto, their respective heirs, executors, administrators, sucessors, assigns and licensees, and the rights herein conveyed, granted and assigned, and agreed to be conveyed, granted and assigned, may be freely assigned in whole or in part by the Purchaser, its successors and assigns.

THIRD (Substituted):  The Author agrees that the conveyance, grant and assignment herein made to the Purchaser in connection with said work shall also include such a conveyance, grant and assignment with respect to all versions and adaptations and publications of said work, and further agrees to provide the Purchaser with documents evidencing such conveyance, grant and assignment as to each such version, adaptation and publication, whenever request therefor is made by the Purchaser. The Author further agrees that he will not publish or permit the publication of said work or any versions or adaptations thereof unless the same shall be duly copyrighted in the United States of America and duly registered for copyright in the Copyright Office of the United States of America, and that, in all publications of said work and any such versions and adaptations thereof, all provisions of the Universal Copyright Convention will be abided by and conformed to in all respects, and the Author further agrees to notify the Purchaser, or to cause the publisher of said work or any versions or adaptations



thereof to notify the Purchaser, whenever the Author or such publisher, as the case may be, shall authorize the publication of said work or any versions or adaptations thereof.

FOURTEENTH:  The Author hereby grants to the Purchaser, for advertising and exploitation purposes, the sole and exclusive rights, forever and throughout the world, to make, publish and copyright, or cause to be made, published and copyrighted, in the name of the Purchaser or its nominee, serially or other-wise, in any and all languages:  synopses, scenarios and fictionized versions (each not exceeding seven thousand five hundred (7,500) words in length), with or without illustrations of any type or kind whatsoever, of any motion picture photoplays made pursuant to this agreement and based principally upon said work, but with respect to any motion picture photoplays not based principally upon said work there shall be no limitation in length; and picture books, comic books, cartoon books and cartoon strips, with or without literary matter, captions or dialogue, based upon, adapted from or suggested by any motion picture photoplays made pursuant to this agreement.


          IN WITNESS WHEREOF, the parties hereto have duly executed these presents in the day and year first above written.


                    PARAMOUNT PICTURES CORPORATION


                    By:_____


                    Title:_____



                    _____
                    MARIO PUZO


EXHIBIT A
PAGE 16

—6—

AR 2-15-82

KNOW ALL MEN BY THESE PRESENTS, That, for a valuable consideration, receipt whereof is hereby acknowledged:

FIRST:      The undersigned,  MARIO PUZO----------------------------------------

hereinafter referred to as the AUTHOR, hereby conveys, grants and assigns to  PARAMOUNT PICTURES CORPORATION--------------------------------------------------------

hereinafter referred to as the PURCHASER:

(a)        The  novel--------------------------------- written by the Author,
entitled
           MAFIA--------------------------------------------------------------

(hereinafter called "said work"), which work, or any versions or adaptations thereof, has never been published anywhere throughout the world, and the manuscripts thereof, together with any and all copyrights therein and all rights now known or hereafter accruing therein and thereto, forever and throughout the world; together with the sole and exclusive right to use said work, in whole or in part, in whatever manner the Purchaser may desire, including, but not limited to, the sole and exclusive rights:  to make and cause to be made literary and dramatic and other versions and adaptations of every kind and character of said work or any part or parts thereof and/or any or all of the characters created therein; to produce, perform and represent said work and/or any versions or adaptations thereof, or any part or parts thereof, in any manner or form the Purchaser may desire; to adapt, arrange, change, interpolate in, transpose, add to and subtract from said work to such extent as the Purchaser, in its sole discretion, may desire in connection with any use which the Purchaser may make of said work; to translate said work and/or any versions or adaptations thereof or any part or parts thereof into any and all languages; to use the titles of said work, or any simulations thereof or any other titles which the Purchaser may select, in connection with any uses of said work or any versions or adaptations thereof or any part or parts thereof; to use any or all of the characters created therein and said titles or any simulations thereof in connection with any other works, whether or not the same are based upon or adapted from said work or any part or parts thereof; to combine said work and any part or parts thereof with any other works for any purpose which the Purchaser may desire; to record, reproduce and transmit sound, including spoken words, dialogue, music and/or songs, whether extracted from said work or otherwise, and to change such spoken words, dialogue, music and/or songs, if extracted from said work, and/or to interpolate other spoken words, dialogue, music and/or songs in or in connection with or as part of the production, reproduction, transmission, exhibition and/or representation of any versions or adaptations which the Purchaser may make of said work, and to make, use, license and vend any and all records or other devices required or desired for any of the aforesaid purposes; to publish said work and/or any versions or adaptations thereof, or any part or parts thereof, and to vend copies thereof; to broadcast by radio broadcasting said work and/or any versions or adaptations and/or any part or parts thereof; to transmit said work and/or any versions or adaptations thereof or any part or parts thereof by television or any other process now known or hereafter to be devised; to copyright, vend and license said work and any such versions or adaptations or any part or parts thereof throughout the world.

(b)        The right, in the name of the Author, when necessary, but for the benefit of the Purchaser, to institute and prosecute any and all actions or proceedings at law or in equity for the violation, impairing or impeding of any of the rights, licenses, privileges and property herein and in the agreement referred to in Paragraph FOURTH hereof between the parties hereto, conveyed, granted and assigned or for the infringement of the copyright in said work through the medium of motion pictures or through any other medium tending to impede, impair or diminish the use and enjoyment by the Purchaser, or any of its successors, assigns or licensees, of such rights, licenses, privileges and property herein and in said agreement conveyed, granted and assigned, and to recover damages and other sums allowed by law or statute therefor, upon condition that the Purchaser indemnify and hold harmless the Author against any court costs by reason of such action or proceeding.

1

EXHIBIT  A
PAGE  17

EXHIBIT "B"

AR 5-1-64

SECOND:    The Author hereby agrees:

(a)    SEE Paragraph SECOND (a) below.

(a)    ~~That the conveyance, grant and assignment herein made to the Purchaser in~~ connection with said work shall also include such a conveyance, grant and assignment with respect to all versions and adaptations of said work, and the Author further agrees to provide the Purchaser with documents evidencing such conveyance, grant and assignment as ~~to each~~ such version and adaptation, whenever request therefor is made by the Purchaser. If any changes in, revisions of, additions to or deletions from said work, including its title, have ~~heretofore~~ been made or may hereafter be made for the purposes of publication, translation, dramatization or otherwise, or if any other versions have heretofore been made or ~~may hereafter~~ be made (in any form whatsoever), whether such changes, revisions, additions, deletions and other versions have originated with the Author or others under a license from ~~the Author~~, the Purchaser shall have the same rights in and to such changes, revisions, additions, deletions and other versions as have been conveyed, granted and assigned ~~hereunder~~ to the Purchaser in and to said work; it being understood and agreed that all such changes, revisions, additions, deletions and other versions upon the creation thereof shall be ~~and constitute a part of said work.~~

(b)    SEE Paragraph SECOND (b) below:

~~(b)~~    (c)    That the Author will, prior to the expiration of any copyright or copyrights in said work or any versions or adaptations thereof (as the same may be extended), renew or extend or procure the renewal or extension of any such copyright or copyrights, and will convey, grant and assign to the Purchaser the rights herein conveyed, granted and assigned for such renewal or extended term. The Author hereby irrevocably appoints the Purchaser as the attorney-in-fact of the Author to execute, deliver and record, on behalf of the Author and in the name of the Author or otherwise, any and all documents necessary or proper to secure the renewal or extension of any such copyright or copyrights and all rights therein and thereto for the term of such renewal or extension, and to execute, deliver and record, on behalf of the Author and in the name of the Author or otherwise, any and all assignments and other documents necessary or proper to convey, grant and assign to the Purchaser the rights herein conveyed, granted and assigned, for the term of such renewal or extension. The Author agrees that, in the event that the present Copyright Law of the United States of America, or of any other country where said work and such versions or adaptations thereof are or may hereafter be protected by copyright, shall be amended or changed or a new Copyright Law enacted, so that the term of copyright is extended or enlarged, the Purchaser shall forthwith and automatically become entitled to all the rights herein conveyed, granted and assigned to the Purchaser for such extended or enlarged term.

THIRD:    The term "Author", as used herein, shall include all the authors of said work named herein, and all the terms, covenants, conditions and other provisions hereof shall be binding upon all such authors, jointly and severally.

FOURTH:    This assignment is made and delivered pursuant to the terms, covenants, conditions and other provisions contained in the agreement dated

and the rights conveyed, granted and assigned, and agreed to be conveyed, granted and assigned, hereunder and under said agreement shall be binding upon and enure to the benefit of the parties hereto, their respective heirs, executors, administrators, successors, assigns and licensees, and the rights herein conveyed, granted and assigned, and agreed to be conveyed, granted and assigned, may be freely assigned in whole or in part by the Purchaser, its successors, assigns and licensees.

SECOND (a):  That the conveyance, grant and assignment herein made to the Purchaser in connection with said work shall also include such a conveyance, grant and assignment with respect to all versions and adaptations and publications of said work, and further agrees to provide the Purchaser with documents evidencing such conveyance, grant and assignment as to each such version, adaptation and publication, whenever request therefor is made by the Purchaser.  The Author further agrees that he will not publish or permit the publication of said work or any versions or adaptations thereof unless the same shall be duly copyrighted in the United States of America and duly registered for copyright in the Copyright Office of the United States of America, and that, in all publications of said work and any such versions and adaptations thereof, all provisions of the Universal Copyright Conven-

EXHIBIT PAGE 18

2

tion will be abided by and conformed to in all respects, and the Author further agrees to notify the Purchaser, or to cause the publisher of said work or any versions or adaptations thereof to notify the Purchaser, whenever the Author or such publisher, as the case may be, shall authorize the publication of said work or any versions or adaptations thereof.

SECOND (b):  That the conveyance, grant and assignment herein made to the Purchaser in connection with said work shall also include for advertising and exploitation purposes, the sole and exclusive rights, forever and throughout the world, to make, publish and copyright, or cause to be made, published and copyrighted, in the name of the Purchaser or its nominee, serially or otherwise, in any and all languages:  synopses, scenarios and fictionized versions (each not exceeding *seventy-five hundred* (7,500 words in length), with or without illustrations of any type or kind whatsoever, of any motion picture photoplays made pursuant to this agreement and based principally upon said work, but with respect to any motion picture photoplays not based principally upon said work there shall be no limitation in length; and picture books, comic books, cartoon books and cartoon strips, with or without literary matter, captions or dialogue, based upon, adapted from or suggested by any motion picture photoplays made pursuant to this agreement.


          IN WITNESS WHEREOF, the undersigned has executed this agreement the          day of                    , 196


                                   _____
                                   MARIO PUZO