UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION<br>        Plaintiff and Counter-Defendant,<br>        v.<br>ANTHONY PUZO, AS EXECUTOR OF THE ESTATE OF MARIO PUZO<br>        Defendant and Counter-Claimant. | No. 12 Civ. 1268 (AJN)<br><br>ECF CASE<br><br>**ORAL ARGUMENT REQUESTED** |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PARAMOUNT PICTURES CORPORATION TO DISMISS AMENDED AND RESTATED COUNTERCLAIM

## **TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 3 |
|   | A. The Cancellation Counterclaim Fails | 3 |
|   |   1. There Are No Prospective Obligations To Anticipatorily Repudiate | 3 |
|   |   2. The 1969 Agreement Was Not Repudiated | 6 |
|   | B. The Rescission Counterclaim Fails | 7 |
|   | C. The Tortious Interference Counterclaim Fails | 8 |
|   | D. All Counterclaims Are Preempted By The Copyright Act | 10 |
| III. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
    404 F.3d 566 (2d Cir. 2005) .................................................................................................... 2, 6

*Ajettix v. Raub*, 804 N.Y.S.2d 580, 592 (2005) ............................................................................ 8

*Buffalo Builders Supply Co. v. Reeb*,
    247 N.Y. 170 (1928) ..................................................................................................................... 8

*De Lorenzo v. Bac Agency Inc.*,
    681 N.Y.S.2d 846 (1998) ............................................................................................................. 6

*Faden Bayes Corp. v. Ford Motor Co.*,
    97 CIV. 1867 (MBM), 1997 WL 426100 (S.D.N.Y. July 30, 1997) ................................ 7

*Hampton v. Dist. Council 37 Health & Sec. Plan*,
    97 Misc. 2d 324, 411 N.Y.S.2d 124 (Civ. Ct. 1978) ............................................................ 6

*Hanley Co. Inc. v. Bradley*,
    259 N.Y.S. 278 (1927) ................................................................................................................. 8

*In re Del-Val Fin. Corp. Sec. Litig.*,
    868 F. Supp. 547 (S.D.N.Y. 1994) ............................................................................................ 9

*In re Exide Technologies*,
    607 F.3d 957 (3d Cir. 2010), as amended (June 24, 2010) ........................................... 5, 7

*Kaplan v. Madison Park Group Owners, LLC*,
    942 N.Y.S.2d 522 (2012) ............................................................................................................. 4

*Long Island R. Co. v. Northville Indus. Corp.*,
    41 N.Y.2d 455 (1977) ................................................................................................................... 3

*Lucente v. International Bus. Machs. Corp.*,
    310 F.3d 243 (2d. Cir. 2002) ...................................................................................................... 3

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
    244 F.R.D. 204 (S.D.N.Y. 2007) ............................................................................................... 5

*Morgan v. McCaffrey*,
    789 N.Y.S.2d 274 (2005) ............................................................................................................. 6

*Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*,
    392 F.3d 520 (2d Cir. 2004) ........................................................................................................ 9

*Palazzetti Import/Export, Inc. v. Morson*,
    No. 98 Civ. 722, 2001 WL 1568317 (S.D.N.Y. Dec. 6, 2001) ........................................... 6

*Reprosystem, B.V. v. SCM Corp.*,
    630 F. Supp. 1099 (S.D.N.Y. 1986) .............................................................................. 3

*Santa-Rosa v. Combo Records*,
    471 F.3d 224 (1st Cir. 2006) ....................................................................................... 10

*Stahl Mgmt. Corp. v. Conceptions Unlimited,*
    554 F. Supp. 890 (S.D.N.Y. 1983) ............................................................................... 8

*Sterling Motor Truck Co. v Schuchman*,
    260 N.Y. 358 (1932) ..................................................................................................... 8

## **TREATISES**

23 Williston on Contracts § 63:29 (4th ed.) ........................................................................... 3

I.      **INTRODUCTION**

The parties' dispute in this action is about the scope of rights granted under a 40 year old copyright grant, the September, 1969 Agreement between Mario Puzo and Defendant Paramount Pictures Corporation ("Paramount").  Under that grant, Puzo transferred his copyright interest in the novel *The Godfather* to Paramount.  Paramount contends that the rights granted included the right to create sequel novels to *The Godfather*.  Defendant and Counter-Claimant Anthony Puzo as Executor for the Estate of Mario Puzo (the "Puzo Estate" or "Estate") disagrees.  While the parties disagree over the scope of the grant, there is no reasonable dispute that 1969 Agreement was a transfer of a property interest, that the transfer was completed long ago, and that neither party has material ongoing obligations under the 1969 Agreement.  Daum Decl. Ex. A.  Given this background, the counterclaims fail as a pleading matter.

*The Cancellation Claim Fails Because The Doctrine of Anticipatory Repudiation Does Not Apply.*  In its opposition, the Puzo Estate argues that it seeks to "cancel" the 1969 Agreeement only "prospectively," based on what it claims was Paramount's "anticipatory repudiation" of that Agreement. This legal theory was not clear from the Counterclaim itself and is set forth for the first time in the opposition brief, but in any event the doctrine of anticipatory repudiation has no application to the facts of this case.  An anticipatory repudiation requires a breach or renunciation of an executory promise—i.e., a promise that has not yet been performed.  The 1969 Agreement conveyed Puzo's copyright interest in the novel *The Godfather*  to Paramount in exchange for a cash payment.  That sale and conveyance was completed more than 40 years ago, as was Paramount's payment to Puzo, and Paramount has no continuing obligations under the 1969 Agreement.  As  the relevant promises have long since ceased to be executory, the claim of anticipatory repudiation must fail.

112286.1                                                                  1

***The Cancellation Claim Fails Because the 1969 Agreement Was Not Repudiated.*** For a contract to be "repudiated" a party must "manifest[] an intent to *fully* breach" a contract. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 587 (2d Cir. 2005). Here, there is no allegation that Paramount manifested an intent to breach any provision of the 1969 Agreement, much less "fully breach" the "entire" 1969 Agreement. Rather, Paramount is alleged to have substantially performed under the 1969 Agreement.

***The Rescission Claim Fails Because No Sufficiently Material Breach Is Alleged and the* Status Quo Ante *Cannot Be Restored.*** Similarly, the rescission claim must fail because, just as there has been no repudiation, the Estate has not alleged a *material* breach of the 1969 Agreement of the kind necessary for rescission. Equally important, the Estate does not offer a serious argument that the parties could be restored by the Court to their respective positions *status quo ante*, which is a necessary element of the claim for rescission.

***The Tortious Interference Claim Is Barred By the Interim Settlement and the Allegations of Third-Party Breach Are Insufficient.*** The tortious interference claim is unambiguously barred by the Interim Settlement Agreement in this matter, which is incorporated in the pleadings and which the Court may judicially notice and enforce. Moreover, the Estate does not allege, as it must, that it has been damaged by any breach of a third party contract.

***All Counterclaims Are Preempted by the Copyright Act.*** Finally, the Counterclaim is preempted by the Copyright Act in its entirety, as the sole basis for each of the counterclaims is an assertion that Paramount interfered with copyright interests purportedly reserved by Puzo.

## II. ARGUMENT

### A. The Cancellation Counterclaim Fails

#### 1. There Are No Prospective Obligations To Anticipatorily Repudiate

In its opposition, the Puzo Estate explains that it is seeking by its First Counterclaim a prospective "cancellation" of aspects of the 1969 Agreement, based on what it calls Paramount's "anticipatory repudiation" of that Agreement. Opp. Br. at 10. However, anticipatory repudiation has no application when, as here, the parties performed their relevant mutual obligations long ago.

"Anticipatory repudiation," also known as 'anticipatory breach,' is defined as a party's repudiation of its duty under a contract *before the time for performance has arrived*." 23 Williston on Contracts § 63:29 (4th ed.) (emphasis added). When the time for performance *has* arrived, and performance has been completed, the doctrine has no application. As the New York Court of Appeals has explained:

> For the doctrine [of anticipatory repudiation] to apply there must be 'some dependency of performances.' *For this reason, a party who has fully performed cannot invoke the doctrine even though the other party has repudiated*.

*Long Island R. Co. v. Northville Indus. Corp.*, 41 N.Y.2d 455, 463-64 (1977) (emphasis added, citations omitted). In other words, the doctrine applies when there are mutual unperformed obligations in a contract, and one party renounces the contract before the time for the relevant performance under the contract is due, enabling a cancellation (in lieu of seeking damages) of the remaining unperformed obligations as between the parties. *See Reprosystem, B.V. v. SCM Corp.*, 630 F. Supp. 1099, 1101 (S.D.N.Y. 1986) ("In New York, the doctrine of anticipatory breach is only available as a defense to continued performance by the injured party and therefore is not appropriate if the party invoking the doctrine has fully performed."); *Lucente v. International Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d. Cir. 2002) ("[a]nticipatory repudiation occurs when,

*before the time for performance has arisen*, a party to a contract declares his intention not to fulfill a contractual duty") (emphasis added) (citations omitted ); *Kaplan v. Madison Park Group Owners, LLC*, 942 N.Y.S.2d 522, 524-25 (2012) ("The rationale behind the doctrine of anticipatory breach is that it gives the non-repudiating party an opportunity to treat a repudiation as an anticipatory breach without having to futilely tender performance or wait for the other party's time for performance to arrive.").

Here, the 1969 Agreement is a conveyance of a property interest—Puzo's copyright interest in the novel *The Godfather*. The property interest was conveyed in 1969. Daum Decl. at Ex. A ¶ 2 ("The author *hereby* conveys grants, and assigns to the Purchaser said work and the manuscripts thereof, together with any and all copyrights therein and all rights now known or hereafter accruing therein and thereto"). Paramount made just two promises in the 1969 Agreement: (i) to credit Puzo in the event a film was produced based on the copyright grant (Daum Decl. Ex. A, ¶ 7(b); and (ii) to pay Puzo a defined schedule of payments based upon the sales performance of the novel, for a maximum payment of $75,000.[1] (Daum Decl. Ex. A ¶ 9). There is no dispute that Paramount performed these obligations: the Puzo Estate specifically alleges that Paramount paid the required sums long ago. Counterclaim ¶ 2.

As for the Puzo Estate, aside from purely ancillary obligations—representations and warranties (Daum Decl. Ex. A. ¶ 1), an obligation to renew the copyright in the novel and provide necessary documentation for the grant (*id.* at ¶ 4, 5), indemnities to Paramount in the case of loss (*id.* at ¶ 6), and compliance with copyright formalities in the publication of the novel (*id.* at ¶ 3)—it also had no obligations following the grant. Thus, the Puzo Estate, like

---

[1] In reality, of course, Puzo earned far more than $75,000 from the success of the *Godfather* films, because he received substantial compensation from later work-for-hire and licensing arrangements that are outside the pleadings and irrelevant to the Estate's counterclaim.

Paramount, has no substantial executory obligations under the 1969 Agreement.   While the parties dispute the metes and bounds of the grant (i.e., whether the sale of rights did or did not include the right to create and publish sequel novels to *The Godfather*, and derivative works arising from those sequel novels) there is no dispute that the sale of the relevant rights was completed long ago.  Paramount long ago performed its limited obligations under the 1969 grant, and Puzo did likewise.  The doctrine of anticipatory repudiation simply does not apply.

Although the Estate alleges (Counterclaim ¶ 14) that its reservation of book publishing rights to sequel novels "were the only executory rights of the Puzo Estate and the only executory obligations of Paramount under the 1969 Agreement," a reservation of rights simply limits the scope of rights granted; it does not create an affirmative executory obligation. *In re Exide Technologies*, 607 F.3d 957, 962 (3d Cir. 2010), as amended (June 24, 2010) (noting, under New York law, that "unless both parties have *unperformed obligations* that would constitute a material breach if not performed, the contract is not executory" and finding no executory contract where a full sales price was paid for a license agreement) (emphasis added).  Thus, the Counterclaim, and the contracts that are incorporated in the pleadings, make it clear that there is no legal basis for the allegation that the reservation of these rights was executory. *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.,* 244 F.R.D. 204, 213 (S.D.N.Y. 2007) (on a 12(b)(6) motion "where a plaintiff's factual allegations or legal conclusions are flatly contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference, in the context of a breach of contract action").[2]

---

[2] Moreover, the Estate's own pleading confirms why anticipatory repudiation cannot support a cancellation here:  If the retention of book publication rights in Puzo were indeed the "only executory" rights and obligations under the 1969 Agreement (Counterclaim ¶ 14), then the Estate's first counterclaim, which  "seeks cancellation of Paramount's future rights to make more

112286.1                                             5

## 2. The 1969 Agreement Was Not Repudiated

The doctrine of anticipatory repudiation applies only when there is a "repudiation," which, in this context, is a statement by a party clearly and unequivocally indicating an intention to commit a breach of the *entire* contract. *De Lorenzo v. Bac Agency Inc.*, 681 N.Y.S.2d 846, 848 (1998) ("The doctrine of anticipatory repudiation entitles the nonrepudiating party to immediately claim damages for a breach of contract where there is a renunciation of the contract in which the repudiating party has indicated an unqualified and clear refusal to perform with respect to the *entire* contract") (emphasis added).[3] The difference of opinion between the parties over the scope of the reservation of publishing rights simply cannot be read as evincing a refusal by Paramount to perform the *entire* 1969 Agreement. *See Aetna Cas. & Sur. Co.*, 404 F.3d at 587.

Indeed, even if, contrary to the Estate's own pleading and the plain text of the 1969 Agreement, Paramount still had some remaining executory obligations under the 1969 Agreement (it does not), it is clear that Paramount has substantially performed under the Agreement by discharging its payment and movie-credit obligations. *See id.* (no repudiation if purported repudiating party has substantially performed). The Estate points to no other

---

(footnote continued)
'Godfather' movies" (Opp. Br. at 10) cannot possibly succeed. The only prospective obligations that could legitimately be "cancelled" would be the Estate's reservation of rights, which is not what the Estate seeks.

[3] This principle is explained, and relied upon, in the cases cited by the Estate. *See Morgan v. McCaffrey*, 789 N.Y.S.2d 274, 276 (2005) (plaintiff's claim, before closing, that an express term of a real estate contract did not apply and that it was entitled to full payment for rental payments was a "total breach" amounting to a repudiation); *Palazzetti Import/Export, Inc. v. Morson*, No. 98 Civ. 722, 2001 WL 1568317, at *9 (S.D.N.Y. Dec. 6, 2001) (noting that repudiation must apply to "entire" contract); *Hampton v. Dist. Council 37 Health & Sec. Plan*, 97 Misc. 2d 324, 327, 411 N.Y.S.2d 124, 127 (Civ. Ct. 1978) (repudiation must go to "essential" object of contract).

affirmative Paramount obligations anywhere in the Agreement.  Moreover, no actual breach of a contractual provision is alleged.  The Estate argues only that (a) Paramount's claims in this action violate its duty of good faith and fair dealing under the 1969 Agreement and (b) that Paramount's assertion of its rights and the interim settlement agreement constituted a breach of the reservation of rights in the Puzo Estate.  Opp. Br. At 13-14.  But there was no express undertaking in the 1969 Agreement to refrain from asserting claims, whether by a lawsuit or to publishers.  The requisite repudiation of the entire contract simply has not been alleged.

### B. The Rescission Counterclaim Fails

Similarly, rescission of the 1969 Agreement is unavailable.  First, rescission, like repudiation, requires a material breach of an agreement.  If the claims of anticipatory breach fail, *a fortiori* there can be no rescission.  Moreover, the requirements for an allegation of breach sufficient to justify a rescission set a very high bar, as rescission requires a breach sufficiently "substantial" to show an unequivocal intent to undo the entire contract, not simply the remaining executory promises.  *E.g. Exide*, 607 F.3d at 963;  *Faden Bayes Corp. v. Ford Motor Co.*, 97 CIV. 1867 (MBM), 1997 WL 426100 (S.D.N.Y. July 30, 1997) (dismissing claim for rescission where alleged breach plainly not substantial given overall contract).  Given the specific allegations in the Counterclaim that Paramount substantially performed under the 1969 Agreement and then acted in reliance upon it for more than 40 years (Counterclaim ¶ 1-7) there is plainly no allegation sufficient to support a rescission claim, as the cases cited in Paramount's opening brief demonstrate.  The Estate has cited no example of rescission on facts similar to those pled here.

Moreover, and equally importantly, rescission entails that the parties be restored to the *status quo ante*, but the Counterclaim does not even attempt to allege that this is possible.  *See*

*Stahl Mgmt. Corp. v. Conceptions Unlimited,* 554 F. Supp. 890, 894 (S.D.N.Y. 1983) ("rescission may be obtained only when it is reasonably feasible to return the parties to their pre-contract status quo"). Although the opposition cites to cases suggesting the general proposition that rescission remedies may include a cash payment,[4] it fails to suggest how that principle could be applied here. The Estate blithely suggests that "the Court would restore to the Puzo Estate the reasonable value of Paramount's use of the rights prior to the rescission." Opp Br.at 11. But, unlike the examples cited by the Estate (e.g., the cash value of a farmer's tractor, Opp. Br. at 11) there is no such value that can be reasonably calculated; the "use of the rights" prior to rescission has now been affected by the more than 40 years of Paramount's development and distribution of three *Godfather* films, the two parties' repeated engagements and writers' agreements, and the fact that the rights transfer was fully completed more than 40 years ago and heavily influenced the behavior of both parties. All of these complicating factors are alleged at length in the Counterclaim, and clearly would make it impossible to calculate restitution (whether in cash or some other form) sufficient to restore the parties to their respective positions prior to the 1969 Agreement. Counterclaim ¶¶ 1-7. These eggs cannot be unscrambled.

### C. The Tortious Interference Counterclaim Fails

The Estate's opposition brief confirms that it is relying upon the escrow provision of the Interim Settlement Agreement in bringing its tortuous interference counterclaim. Opp. Br. at 17. However, the Interim Settlement Agreement specifically provides that the escrow agreement

---

[4] *Sterling Motor Truck Co. v Schuchman*, 260 N.Y. 358, 360 (1932), *Buffalo Builders Supply Co. v. Reeb*, 247 N.Y. 170, 176 (1928), and *Hanley Co. Inc. v. Bradley*, 259 N.Y.S. 278, 287-8 (1927) are all cases that do no more than stand for the general proposition that a court may, in equity, order cash consideration as part of a remedy of restitution following rescission. *Ajettix v. Raub*, 804 N.Y.S.2d 580, 592 (2005) is a case where both parties agreed to rescind a contract, and the court analyzed the equitable factors at issue in the rescission.

would not *affect* any claim by a party.  Daum Decl. Ex. C at ¶ 2.6 ("Except for the matters expressly agreed to herein, this Interim Agreement shall not waive or affect any of the rights, remedies, or claims of any Party (including, inter alia, claims for damages, declaratory relief, cancellation, and termination)").  That settlement agreement is binding and incorporated into the pleadings, and the Court may rely upon it in deciding this motion.  *In re Del-Val Fin. Corp. Sec. Litig.*, 868 F. Supp. 547, 551-52 (S.D.N.Y. 1994).  The Estate's half-hearted suggestion that the Interim Settlement Agreement does not unambiguously bar its reliance on the escrow account to support its tortious interference claim has no merit—the parties expressly agreed that their agreement to escrow funds would not "affect any" claim.

Moreover, and critically, the opposition brief confirms that no breach of a third party contract occurred because no damages have been alleged arising from a breach of a third-party contract.  In New York, as elsewhere, an element of a claim for breach of contract is that a plaintiff plead and prove *damages* resulting from the breach. *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004) ("to establish a prima facie case for breach of contract, a plaintiff must plead and prove . . . damages resulting from the breach.").  The Estate claims a breach of third-party contracts occurred because the publishers of *The Family Corleone* asserted that they would publish that novel only if Paramount consented, and only after the escrow requirement.  Opp. Br. at 17.  But the Estate also concedes, as it must, that Paramount in fact provided its consent, and that the Publishers have in fact published the novel.  Opp. Br. at 17.  Even assuming that the Estate's allegations of third-party breach are not otherwise barred, there are no damages alleged from the breach: The Estate acknowledges that the alleged breach by the publishers was merely the assertion of a "condition" that had no actual effect on the

Estate. Accordingly, the Estate has not adequately alleged the element of damage from a third party breach sufficiently to support its counterclaim for tortious interference.

### D. All Counterclaims Are Preempted By The Copyright Act

Finally, all the counterclaims are preempted by the Copyright Act. While the Estate points to a number of cases involving state-law disputes over intellectual property ownership that found such claims not preempted, it fails to reconcile those cases with the Counterclaim it has pled here. In this case, the *only* dispute at issue is whether, and to what extent, Paramount's assertion of its rights has interfered with the copyright interests that the Puzo Estate alleges it holds. There is no "extra element" to the counterclaims whatsoever—they merely assert that Paramount's actions interfere with the Estate's rights to fully exercise the Estate's purportedly reserved copyright interests. No case cited by the Estate deals with these, or similar, circumstances. By contrast, for reasons more fully explained in Paramount's opening brief, the First Circuit's reasoning in *Santa-Rosa v. Combo Records*, 471 F.3d 224, 227 (1st Cir. 2006) makes clear why preemption applies here: when a contractual claim for rescission or breach merely asserts that a party has retained ownership of a copyright and seeks to enforce the copyright, and there are no other extra elements, state-law claims are preempted.

### III. CONCLUSION

For the foregoing reasons, the Counterclaim should be dismissed.

Dated: July 17, 2012 KENDALL BRILL & KLIEGER LLP

By:/s Richard B. Kendall

Richard B. Kendall
Nicholas F. Daum
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067
Tel: (310) 556-2700
Fax: (310) 556-2705
E-mail: rkendall@kbkfirm.com

*Attorneys for Plaintiff Paramount Pictures Corporation*