UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

PARAMOUNT PICTURES CORPORATION,

        Plaintiff and Counterclaim Defendant,

        -v-

ANTHONY PUZO, *as executor of the Estate of Mario Puzo*,

        Defendant and Counterclaim Plaintiff.

---------------------------------------------------------------------X

> **USDC SDNY**
> **DOCUMENT**
> **ELECTRONICALLY FILED**
> **DOC #:** _____
> **DATE FILED:** SEP 2 6 2012

12 Civ. 1268 (AJN)

<u>ORDER & OPINION</u>

ALISON J. NATHAN, District Judge:

    Paramount Pictures Corporation ("Paramount") initiated this action against the Estate of Mario Puzo ("the Estate"), seeking declaratory relief and damages for alleged ongoing and prospective violations of the federal Copyright Act, 17 U.S.C. § 101 *et seq.*, and of the federal trademark laws, 15 U.S.C. §§ 1114 and 1125(a), as a result of the Estate's creation and publication of sequels to *The Godfather*. The Estate denies liability and counterclaims for breach of contract and tortious interference and seeks cancellation or, in the alternative, rescission of the contract with Paramount.

    Before the Court is Paramount's motion to dismiss the Estate's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Not immediately before the Court in the instant motion – and therefore not decided in this opinion – is the underlying question of whether the Estate or Paramount owns the book publishing rights to any sequels to *The Godfather*. The Court denies Paramount's motion to the dismiss the Estate's breach of contract counterclaim. As to all other counterclaims, Paramount's motion to dismiss is granted.

1

## I.   LEGAL STANDARD

When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts and draw all reasonable inferences in the light most favorable to the non-moving party. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  To survive a motion to dismiss, the counterclaimant's pleading must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1960 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In addition to the allegations of the pleading itself, the Court may consider documents attached as exhibits or incorporated by reference. *Halebian v. Berv*, 644 F.3d 122, 131, n.7 (2d Cir. 2011); *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008).  Any facts relied upon in this opinion are drawn from the Estate's counterclaim pleading and from documents referenced in and integral to that pleading.

## II.   FACTS

In 1969, Paramount purchased from Mario Puzo ("Puzo") certain rights in Puzo's novel *The Godfather*. (Am Cntrclm. ¶ 2) By written agreement (the "1969 Agreement"), Puzo granted to Paramount "any and all copyrights therein and all rights now known or hereafter accruing therein and thereto, forever and throughout the world, together with the sole and exclusive right to use said work, in whole or in part, in whatever manner the Purchaser [*i.e.*, Paramount] may desire, including, but not limited to, the sole and exclusive right: to make and cause to be made literary and dramatic and other versions and adaptations of every kind and character of said work or any part or parts thereof and/or any or all of the characters created therein . . . [and] to adapt, arrange, change, interpolate in, transpose, add to and subtract from said work to such extent as

the Purchaser, in its sole discretion, may desire in connection with any use which the Purchaser

may make of said work ... [and] to use any or all of the characters created therein and said titles

or any simulations thereof in connection with any other works, whether or not the same are based

upon or adapted from said work or any part or parts thereof . . . ."  (Daum Decl. Ex. A and B)

Central to the dispute, however, is language that was *struck* from the 1969 Agreement.

The stricken language would have granted Paramount the right to "publish said work and/or any

versions or adaptations thereof, or any part or parts thereof, and to vend copies thereof."  (*Id.*)

The parties contest the meaning and significance of the stricken language.  Paramount contends

that "this language was stricken from the contract and grant of copyright because Puzo had

already published the novel entitled *The Godfather* and that, aside from the limited right to

publish the original *The Godfather* novel and versions (for example, trade paperbacks, mass-

market paperbacks, or large-type editions) or adaptations (for example, audiobooks) of that

original novel, Puzo retained no other rights in *The Godfather*."  (Am. Cmplt. ¶ 3)  By contrast,

the Estate argues that the striking of this language had the effect of reserving all book publishing

rights in Puzo.  (Am. Cntrclm. ¶ 2)  According to the Estate, the reserved rights "were intended

to include book publishing rights in all parts and elements of *The Godfather* such as its

characters and, *inter alia*, book publishing rights in any book depicting characters that were

'part' of *The Godfather* in new and different situations, *i.e.*, sequels."  (*Id.*)

The instant action was precipitated by the Estate's intended publication of a prequel to

*The Godfather* – a book entitled *The Family Corleone*.  (Am. Cntrclm. ¶ 11)  The Estate alleges

that, as a result of this intended publication, "[s]tarting in December 2011 and continuing

thereafter in 2012, Paramount asserted to the Estate, contrary to the 1969 Agreement and the

parties' course of conduct during Puzo's lifetime, that Paramount was automatically the

3

exclusive owner of all book publishing rights in any sequel to *The Godfather*, even if written by Puzo without any contract with, or payment from, Paramount, or written by an author commissioned and paid by the Puzo Estate, and that neither Puzo, nor the Puzo Estate, nor any publisher had any such rights or any right to publish *The Family Corleone* or any other book that is a sequel to *The Godfather*." (Am. Cntrclm. ¶ 13.a.)

The Estate also alleges that Paramount told "the companies that had agreed to publish *The Family Corleone* (the "Publishers") that neither the Publishers nor the Estate had any right to publish *The Family Corleone*, and that, if they published that book, as Paramount knew the Publishing Contracts required, they would be violating Paramount's rights and would incur substantial liability to Paramount." (Am. Cntrclm. ¶ 13.b.)  As a result, "the Publishers would not publish *The Family Corleone*, unless Paramount first provided its consent to that publication." (*Id.*)  The Estate characterizes this as "a condition to the exercise of the Puzo Estate's rights under the 1969 Agreement that was not contained in those contracts and that neither Paramount nor the Publishers had the right to impose on the Puzo Estate." (*Id.*)

According to the Estate, Paramount also "refused to provide the required consent to publication of *The Family Corleone*, which had been made a condition to the publication, unless the Estate paid into an escrow all funds theretofore or thereafter paid to the Puzo Estate by the Publishers in respect of *The Family Corleone*." (*Id.*)  The Estate similarly describes this as "an obligation that was not in the 1969 Agreement, and [that] neither Paramount nor the Publishers had any right to impose." (*Id.*)  Publication of *The Family Corleone* did in fact go forward following execution of an Interim Settlement Agreement which contained, *inter alia*, the requirement that funds received by the Estate from the Publishers be placed into escrow. (Daum Decl. Ex. C; Am. Cntrclm. ¶¶ 13.b., 27)

4

Finally, Paramount asserted to the Estate that Paramount "was automatically the exclusive owner of all motion picture rights in *The Family Corleone* and in all books that are sequels to *The Godfather*, including all the original, new characters and original, new story material in such sequels not commissioned or paid for by Paramount but written by Puzo or by authors commissioned and paid by his Estate with no Paramount contract or payment." (Am. Cntrclm. ¶ 13.c.)

Paramount initiated this action for declaratory relief and damages for copyright and trademark violations. The Estate counterclaims and argues that Paramount's acts, detailed above, constitute a material breach and repudiation of the 1969 Agreement supporting an action not only for breach of contract but also for prospective cancellation or, in the alternative, rescission. (Am. Cntrclm. ¶¶ 19, 22, 24) The Estate also argues that by asserting to the Publishers that neither they nor the Estate had the right to publish *The Family Corleone* absent Paramount's consent, and by conditioning its consent on the Estate placing into escrow all monies received from the Publishers for *The Family Corleone*, Paramount tortiously interfered with the Estate's publishing contracts. (Am. Cntrclm. ¶ 27)

### III. DISCUSSION

Paramount moves to dismiss each of the Estate's counterclaims. As to the Estate's claim for breach of contract, Paramount moves for dismissal on the grounds of copyright preemption. The Estate seeks to vindicate a right that, if it exists, arises out of the 1969 Agreement and not out of federal copyright law. Consequently, for the reasons discussed below, the Court finds that the Estate's breach of contract claim is not preempted and therefore denies Paramount's motion to dismiss as to this claim. With respect to the Estate's counterclaims for cancellation, rescission, and tortious interference, Paramount moves for dismissal arguing that these claims are

both insufficiently pled and preempted by the Copyright Act.  As outlined below, the Court

agrees that these claims must be dismissed as insufficiently pled, and therefore does not reach the

question of preemption as to these claims.

### A. The Estate's Breach of Contract Claim

Paramount moves to dismiss the Estate's breach of contract claim as preempted by the

Copyright Act.  Before reaching the issue of preemption, clarification of the basis for the Estate's

breach of contract claim is necessary.

### 1.    The Estate's Breach of Contract Claim Is Founded On The Implied Covenant of Good Faith And Fair Dealing

The 1969 Agreement is, at base, the sale by Puzo of certain copyrights to Paramount.

Whether book publishing rights to all sequels were among the rights sold by Puzo to Paramount

is, of course, the ultimate issue underlying Paramount's copyright infringement claims and one

that both parties agree is not before the Court on Paramount's motion to dismiss.  Assuming, as

the Estate alleges, that these rights were *not* sold to Paramount and that the language stricken

from the 1969 Agreement constitutes a reservation of all book publishing rights in Puzo, (Am.

Cntrclm. ¶ 2), the Court must determine what attendant contractual obligation Paramount is

alleged to have repudiated or failed to perform.

The Estate alleges that Paramount repudiated and actually breached the 1969 Agreement

by asserting rights not afforded it under the contract (*i.e.*, exclusive ownership of all book

publishing rights in any sequel to *The Godfather*), by disavowing rights reserved in the Estate

under the contract (*i.e.*, book publishing rights in any sequel to *The Godfather*), and by imposing

conditions not contained in the 1969 Agreement on the Estate's exercise of its publishing rights

(*i.e.*, receipt of Paramount's permission prior to publishing *The Family Corleone* and paying into

escrow all funds generated by such publication).  (Am. Cntrclm. ¶¶ 13.a-b).  In essence, the

6

Estate begins its analysis with its proposed contract interpretation proposition—that it reserved for itself rather than transferred to Paramount the book publication rights to all sequels to *The Godfather* – and then reasons from this interpretive proposition that all actions taken by Paramount counter to this position – for example, Paramount's assertion of its view that the book publication rights were not reserved by the Estate – constitute a material breach and repudiation of the contract.

Contrary to the Estate's assertions, "[a] statement disavowing a party's rights under a contract," "the erroneous claim to a right not given by the contract," or "an untenable interpretation of a parties' [*sic*] contractual rights or duties," (Opp. 13), is not, in and of itself, a repudiation. Rather, under New York law, such conduct constitutes repudiation only if it is done to avoid a contractual obligation or if it is paired with a refusal to perform a contractual obligation. That is, repudiation occurs when a party advances an untenable contract interpretation to avoid its contractual obligations or when it refuses to perform its contractual obligations absent the other party's satisfaction of extracontractual conditions. *See In re Best Payphones, Inc.*, 450 Fed. Appx. 8, at *2 (2d Cir. Nov. 23, 2011) (quoting *SPI Comm. v. WTZA–TV Assoc. Ltd. P'ship*, 644 N.Y.S.2d 788, 790 (3d Dep't 1996)).

Indeed, none of the cases cited by the Estate support the proposition that the advancement of a particular contract interpretation, if not done to avoid performance, amounts to repudiation. (Opp. 13) Instead, these cases confirm that to constitute repudiation, such conduct must be paired with an effort to escape performance of a contractual obligation. *See Palazzetti Import/Export, Inc. v. Morson,* 2001 WL 1568317, at *9 (S.D.N.Y. Dec. 06, 2001) (refusal to perform based on unwarranted interpretation of the contract can constitute repudiation) (citing *SPI Comm.*, 644 N.Y.S.2d at 790); *Record Club of Am. v. United Artists Records, Inc.*, 643

7

F.Supp. 925, 939 (S.D.N.Y. 1986) (refusal to perform based on erroneous contract interpretation can constitute repudiation); *Morgan v. McCaffrey*, 789 N.Y.S.2d 274, 276 (2d Dep't 2005) (a party who refused to perform unless the other party conceded to its untenable interpretation of the contract had anticipatorily repudiated the contract) (citing *IBM Credit Fin. Corp. v. Mazda Motor Mfg. (USA) Corp.*, 92 N.Y.2d 989 (3d Dep't. 1998), which explicitly held that "untenable interpretation of a key contractual provision, *and refusal to perform otherwise*, constituted an anticipatory breach of the contract." 92 N.Y.2d at 993 (emphasis added)); *Hampton v. Dist. Council*, 411 N.Y.S.2d 124, 127 (N.Y. Civ. Ct. 1978) (health benefits plan repudiated health benefits contract where it advanced untenable contract interpretation in an attempt to avoid covering plaintiff's dental care).

Thus, the question remains, what contractual obligation is Paramount alleged to have attempted to avoid, refused to perform, or, in the case of actual breach, failed to perform?  As Paramount notes in its Reply, its only express obligations under the contract were to pay Puzo $50,000 plus a possible additional $25,000 depending on sales of *The Godfather* novel and to credit Puzo in the event a film was produced based on the copyright grant.  (Daum Decl. Ex. A ¶¶ 7(b), 9; Reply 4)  Even accepting the Estate's position that the language stricken from the 1969 Agreement indicates a reservation of book publishing rights in Puzo, the Estate can point to no express contractual provision in which Paramount agreed to refrain from litigation or from contesting the Estate's interpretation of the rights granted and reserved under the contract.  There is not, for example, an express covenant not to sue or otherwise interfere with each side's granted and reserved rights.  Instead, the Estate asserts that the obligation Paramount attempted to avoid, refused to perform, and actually failed to perform is its obligation, arising out of the implied

8

covenant of good faith and fair dealing, not to interfere with the book publishing rights reserved in Puzo.  (Am. Cntrclm. ¶ 13)

Under New York law, the implied covenant of good faith and fair dealing inheres in every contract and obligates contracting parties to refrain from conduct that would "destro[y] or injur[e] the right of the other party to receive the fruits of the contract."  *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995).  Because Paramount does not move to dismiss the Estate's breach of contract claim for any reason other than preemption, the Court takes no position on whether or not the Estate's theory of breach is viable.  Rather, having identified the basis of the Estate's breach of contract claim, the Court turns to the question of preemption under federal copyright law.

### 2.   The Breach of Contract Claim Is Not Preempted

"The Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act . . . and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law."  *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) (citing 17 U.S.C. § 301(a); *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997)).  The first prong of this test is referred to as the "subject matter requirement," and the second prong is referred to as the "general scope requirement."  *Id.*

Paramount asserts, and the Estate does not contest, that the subject matter requirement is satisfied here.  (Mot. 16)  The subject matter requirement "is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works."  *Briarpatch*, 373 F.3d at 305.  Because both literary

9

works and motion pictures are explicitly protected by the Copyright Act, the Court agrees that the subject matter requirement is met. *See* 17 U.S.C. §§ 102(a)(1) and (a)(6).

Whether the general scope requirement is satisfied, however, is deeply contested by the parties. In assessing whether the Estate's breach of contract claim seeks to vindicate rights that are equivalent to rights already protected by copyright law, the Court is instructed by the Second Circuit's recent decision in *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424 (2d Cir. 2012), which directly addressed preemption of breach of contract claims.[1]

In *Forest Park*, the Second Circuit considered the preemption of a breach of contract claim brought by television show developers who alleged that a cable television network had breached an implied contract term to pay reasonable compensation if the developers' concept was used as a television show. The Second Circuit held that the developers' breach of contract claim was not preempted by the Copyright Act because it had three qualitative differences with a copyright violation claim: (1) it involved a right not provided for by the Copyright Act (*i.e.*, receipt of payment for the use of a work); (2) it required proof of elements beyond use or copying (*i.e.*, mutual assent and valid consideration); and (3) it involved a right held only against the network and not a right held against the world. 683 F.3d at 431.

Each of the three qualitative differences identified in *Forest Park* are present here. First, contrary to Paramount's assertion, the Estate seeks to enforce a right that, if it exists, arises out of the 1969 Agreement and not out of federal copyright law. That is, the Estate seeks to enforce its purported right, arising out of the implied covenant of good faith and fair dealing, not to have its contractual rights injured as the result of either Paramount claiming certain contractual rights for

---

[1] The Court notes that *Forest Park* was published in the midst of the parties' briefing and was not cited in either party's papers. At oral argument, the Court gave both parties an opportunity to address the Second Circuit's decision. Following oral argument, neither party requested an opportunity to provide supplemental briefing.

itself or disclaiming the Estate's holding of the same.  Rather than seeking to enforce exclusive

rights provided by federal copyright law (*i.e.*, rights against wrongful reproduction, adaption,

performance, distribution or display), the Estate seeks to enforce a right derived from the implied

covenant of good faith and fair dealing.  *See Briarpatch*, 373 F.3d at 305 (in order to be

preempted, "the state law claim must involve acts of reproduction, adaptation, performance,

distribution or display.").

      Second, like the claim in *Forest Park*, the Estate's claim requires proof of elements that

make it qualitatively different from a copyright infringement claim.  In order to demonstrate

copyright infringement, a party must show ownership of a valid copyright and copying of the

protectable elements of the copyrighted work.  *See Medforms, Inc. v. Healthcare Mgmt.*

*Solutions, Inc.*, 290 F.3d 98, 109 (2d Cir. 2002).  By contrast, the Estate's claim involves neither

use nor copying.  Rather, in order to prevail on its claim, the Estate must show that Paramount

has a contractual obligation not to interfere with the Estate's exercise of its book publishing

rights and that Paramount breached that obligation.  Thus, the elements of the Estate's breach of

contract claim distinguish it from a copyright infringement claim.  *See Forest Park*, 683 F.3d at

430 ("[I]f an extra element is required instead of or in addition to the acts of reproduction,

performance, distribution or display . . . there is no preemption.") (citing *Computer Assocs. Int'l,*

*Inc. v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir. 1992)); *Briarpatch*, 373 F.3d at 305 (state law

claim is not preempted if it contains "extra elements").

      Third, the Estate's claimed right is one that it has only against Paramount and not a right

that it has against the world.  As the Seventh Circuit held in *ProCD, Inc. v. Zeidenberg*, 86 F.3d

1447, 1454 (7th Cir. 1996): "A copyright is a right against the world.  Contracts, by contrast,

generally affect only their parties; strangers may do as they please, so contracts do not create

exclusive rights." (quoted with approval in *Forest Park*, 683 F.3d at 431).  Only Paramount is obligated to comply with the provisions – implied or express – of the 1969 Agreement, and only Paramount is potentially liable for violation of the covenant of good faith and fair dealing.

In sum, accepting the Estate's construction of the 1969 Agreement, the contract does not simply require Paramount to honor the Estate's exclusive rights under the Copyright Act; it requires Paramount to comply with a separate contractual obligation (*i.e.*, not to engage in conduct violative of the implied covenant of good faith and fair dealing).  Because it is the alleged violation of the latter obligation that forms the basis of the Estate's breach of contract claim, the claim is not preempted, and Paramount's motion to dismiss the Estate's breach of contract counterclaim is DENIED.

## B.  The Estate's Claim for Cancellation

Coupled with its breach of contract claim, the Estate seeks cancellation of the 1969 Agreement on the theory that Paramount's conduct amounts to an anticipatory repudiation of the contract.[2]  (Opp. 9-10)  Paramount asserts that the Estate cannot establish anticipatory repudiation because both parties have performed all of their express obligations under the contract, meaning that there are no future obligations to cancel.  (Reply 3-5)  Paramount further argues that even if it did have future obligations under the contract, they are not significant enough such that a refusal to perform would amount to repudiation.  (Reply 6-7)

The Estate disagrees, contending that both parties have an ongoing contractual obligation not to interfere with or injure the other party's contractual rights, which obligation renders the contract not yet fully performed by either party.  (Tr. 13:14 – 14:10; Opp. 13)  The Estate insists

---

[2] Cancellation is a prospective remedy that "occurs when either party puts an end to the contract for breach by the other" and extinguishes the future obligations of both parties to the agreement.  *See* 13-67 Corbin on Contracts § 67.2.

that Paramount's interference with and refusal to recognize the Estate's holding of these rights constitutes repudiation given the importance of these rights to Puzo. (*Id.*) The Court need not reach the question of whether or not the contract has been fully performed because the Estate has not adequately alleged repudiation.

Under New York law, repudiation is generally defined as a refusal to perform with respect to the *entire* contract. *See In re Best Payphones*, 450 Fed. Appx. 8, at *2; *Palazzetti Import/Export,* 2001 WL 1568317, at *9 (citing *De Lorenzo v. Bac Agency Inc.*, 681 N.Y.S.2d 846, 848 (3d Dep't. 1998)); *City of New York v. New York Yankees*, 458 N.Y.S.2d 486, 489 (N.Y. Sup. Ct. 1983) (partial repudiation insufficient to support claim of anticipatory breach); 22A N.Y. Jur. 2d Contracts § 455 ("The renunciation of the contract must be an unqualified and positive refusal to perform, and must go to the whole of the contract."). According to Paramount, it has performed all of its express contractual obligations and, therefore, it cannot have refused to perform with the respect to the entire contract. (Reply pp. 6-7)   Indeed, the Estate acknowledges that Paramount has at least performed its express contractual obligation to pay Puzo $50,000 plus a possible additional $25,000 depending on sales of *The Godfather* novel. (Am. Cntrclm. ¶ 2) Consequently, the Estate has failed to plead that Paramount refused to perform with respect to the entire contract.

This does not, however, end the inquiry because the Estate contends that Paramount need not have refused to perform the contract in its entirety; rather, according to the Estate, a refusal to perform a portion of the contract is sufficient to constitute repudiation, so long as it is an essential portion of the contract. (Tr. 14:23 – 15:6) Such a definition of repudiation can be found in the treatises of Professors Corbin and Farnsworth and has been cited by some courts in this Circuit. *See* 10-54 CORBIN ON CONTRACTS § 972 (2012) (repudiation generally involves a

13

refusal to perform with respect to the entire contract, but it also includes "refusal to render such a material part of the promised performance that it goes to the essence of the contract"); II FARNSWORTH ON CONTRACTS § 8.21 (3d ed. 2004) ("A repudiation is a manifestation by one party to the other that the first cannot or will not perform at least some of its obligations under the contract. . . . For a repudiation to have legal effect, courts have generally required that the threatened breach be serious enough that the injured party could treat it as total if it occurred."); *Biopharmaceutics, Inc. v. Primavera Lab., Inc.*, 1995 WL 769006, at *8 (E.D.N.Y. Dec. 20, 1995). However, even under this broader definition of repudiation, the Estate's claim fails.

As discussed *supra* pp. 6-8, the Estate alleges that Paramount refused to perform its obligation not to interfere with or injure the Estate's book publishing rights. Assuming that Paramount was under such an obligation, the Estate nonetheless fails to adequately allege that this obligation goes to the essence of the 1969 Agreement.

Looking to the text of the 1969 Agreement, its object is the sale of certain copyrights by Puzo to Paramount in exchange for financial remuneration and acknowledgement in Paramount's films. (Daum Decl. Ex. A) The Estate maintains that the contract *does not include* a conveyance to Paramount of book publishing rights. (Am. Cntrclm. ¶ 2) Thus, if the Court credits the Estate's pleading, the book publishing rights were not part of the consideration exchanged by the parties. The Estate cannot insist that these rights were the essence of the agreement while also maintaining that they were not part of the bargain. The Court therefore finds that the Estate has failed to allege that the book publishing rights were the essence of the 1969 Agreement.

Furthermore, if the book publishing rights were not the essence of the contract, then logic dictates that any implied obligation not to injure or interfere with those rights also cannot "go to the essence of the agreement." Consequently, Paramount's alleged refusal to perform the

14

implied obligation is not sufficiently serious to constitute repudiation.

In conclusion, whether repudiation is defined as requiring refusal to perform with respect to the entire contract or only with respect to an essential portion thereof, the Estate has failed to adequately allege repudiation. Consequently, Paramount's motion to dismiss the Estate's claim for cancellation is GRANTED.

### C. The Estate's Claim for Rescission

As an alternative to cancellation, the Estate seeks rescission of the 1969 Agreement. (Am. Cntrclaim. ¶ 22) Rescission is considered an "extraordinary remedy" for breach of contract, "appropriate only where the breach is found to be 'material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract.'" *Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir. 1980) (quoting *Callanan v. Powers*, 199 N.Y. 268, 284 (1910)). Paramount moves to dismiss the Estate's claim for rescission, arguing that the Estate cannot establish a sufficiently substantial breach of the contract to warrant the "extraordinary remedy" of rescission. Because the Estate has failed to allege that the book publishing rights are the object of the 1969 Agreement or that Paramount's conduct defeated these rights, the Court agrees that the Estate has not alleged a breach meriting rescission.

As an initial matter, the alleged breach is insufficient because, as discussed *supra* p. 14, the Estate has failed to allege that the book publishing rights are the essence of the 1969 Agreement. Thus, even if Paramount's alleged conduct had a strong tendency to deprive the Estate of its book publishing rights or to injure the Estate's exercise thereof, such conduct would not have a sufficient bearing on the object of the contract to warrant the remedy of rescission.

Indeed, even if the book publishing rights *are* the essence of the 1969 Agreement, the

15

alleged breach is insufficient because the Estate has failed to allege that Paramount's conduct defeated those rights. The Estate does not claim that it was unable to publish *The Family Corleone*, that the Publishers failed to pay for such publication, or that, if it ultimately prevails on its interpretation of the contract (*i.e.*, that the 1969 Agreement did not transfer book publishing rights to Paramount), it will be unable to exercise its book publishing rights into the future. Thus, even if the Court were to assume that the book publishing rights are the object of the contract, the Estate would nonetheless have failed to allege that Paramount's conduct had a strong tendency to defeat these rights.

In sum, the Estate has failed to allege a breach sufficient to warrant the extraordinary remedy of rescission. Consequently, Paramount's motion to dismiss the Estate's claim for rescission is GRANTED.

### D. The Estate's Claim for Tortious Interference

Finally, the Court turns to the Estate's tortious interference claim. The Estate alleges that Paramount tortiously interfered with the Estate's publishing contracts by wrongly asserting to the Publishers that it held the book publishing rights under the 1969 Agreement. (Am. Cntrclm. ¶¶ 13.b, 27) As a result, the Publishers required the Estate to obtain permission from Paramount to publish *The Family Corleone*, who in turn would only grant permission if all monies generated by such publication were paid into escrow – conditions allegedly not contained in the publishing contracts and conditions the Publishers allegedly did not have the contractual authority to impose. (*Id.*)

"To state a claim for tortious interference with contract, [the Estate] must demonstrate the existence of a valid contract with a third party, [Paramount's] knowledge of the contract, [Paramount's] intentional and improper procuring of a breach, and damages." *Quinn v. Jacobs*,

2012 WL 3000673, at *2 (S.D.N.Y. July 16, 2012) (quoting *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007)).  Paramount moves to dismiss the Estate's tortious interference claim on the grounds that the Estate cannot, as a matter of law, establish either a third-party breach or damages.

The Estate does not allege that the Publishers failed to publish *The Family Corleone* or to pay the contractually agreed to sum for such publication; rather, the Publishers' alleged breach arises out of their imposition of extracontractual conditions on their performance (*i.e.*, securing Paramount's permission prior to publication).  Assuming that this was in fact a breach by the Publishers, the Estate has inadequately alleged that it suffered any damages as a result of the breach.  That is, the Estate does not allege that Paramount withheld its permission or that publication of *The Family Corleone* did not in fact occur.  Rather, the only damages the Estate might be understood to allege are damages stemming from Paramount's requirement that monies generated by publication of *The Family Corleone* be paid into escrow.  (Am. Cntrclm. ¶¶ 13.b., 27)

The Estate is barred, however, from relying on the escrow arrangement as the basis for a claim against Paramount.  The escrow arrangement was memorialized in the Interim Settlement Agreement, which provides: "[e]xcept for the matters expressly agreed to herein, this Interim Agreement shall not waive or affect any of the rights, remedies, or claims of any Party (including, *inter alia*, claims for damages, declaratory relief, cancellation, and termination)."[3]  (Mot. 21; Daum

---

[3] On a motion to dismiss, the court may consider a document attached to or incorporated by reference in the challenged pleading. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the pleading relies heavily upon its terms and effect, which renders the document integral to the [pleading]." *Id.* at 153 (internal quotes and citations omitted).  Here, the Court may properly consider the Interim Settlement Agreement even though it is not attached to the Estate's Amended Counterclaims because, as discussed above, the Estate relies heavily on its terms and effect (*i.e.*, the escrow requirement) in support of the Estate's tortious interference claim, rendering the document integral to the pleading. *See* Am. Cntrclm. ¶¶ 13.b., 27.

Decl. Ex. C)  As the Estate acknowledged at oral argument, the escrow arrangement "affects" the

tortious interference claim because it is the foundation of the claim.  (Tr. 21:18-24)  Thus, pursuant

to the terms of the Interim Settlement Agreement, the escrow arrangement cannot support a

tortious interference claim against Paramount.

Because the Estate has failed adequately to allege damages necessary to state a claim for

tortious interference, Paramount's motion to dismiss this claim is GRANTED.

### IV.    CONCLUSION

For the forgoing reasons, it is hereby

ORDERED that Paramount's motion to dismiss the Estate's counterclaim for breach of
contract is DENIED; and it is further

ORDERED that Paramount's motion to dismiss the Estate's counterclaims for
cancellation, rescission, and tortious interference is GRANTED; and it is finally

ORDERED that the parties appear for a status conference before the Court on January 11,
2013 at 10:00 AM in Courtroom 17B of the United States Courthouse for the Southern
District of New York, 500 Pearl Street, New York, New York.  The parties are reminded
of the deadlines contained in this Court's case management order, Dkt. #19, and of the
Court's intention to enforce those deadlines.

SO ORDERED.


Dated: September 26, 2012               _____
       New York, New York                   ALISON J. NATHAN
                                         United States District Judge